Charles STEPHENSON, etc., et al.,
Plaintiffs,

v.

The DURIRON COMPANY, Inc.,
Defendant and Third-Party
Plaintiff,
and
Aetna Insurance Company, Third-Party
Plaintiff,

v.

KUHNS BROTHERS COMPANY,
and
Hartford Accident and Indemnity Company, Third-Party Defendants.

No. 3009.

United States District Court
S. D. Ohio, W. D.
Oct. 21, 1968.

James C. Baggott, Dayton, Ohio, for plaintiffs Charles Stephenson and others.

P. Eugene Smith, of Marshall & Smith, Dayton, Ohio, for Duriron Co., defendant and third party plaintiff and Aetna Ins. Co., third party plaintiff.

William H. Selva, of Curtner, Selva, Parkin & Seller, Dayton, Ohio, for Kuhns Brothers Co. and Hartford Acc. and Indem. Co., third party defendants.

## DECISION FINDINGS OF FACT CONCLUSIONS OF LAW JUDGMENTS

WEINMAN, Chief Judge.

### HISTORY OF CASE

Plaintiffs in the captioned action claim damages for injury to their persons and property from an explosion of natural gas which entered their residence at the intersection of 10th and Karluk Streets in Anchorage, Alaska, on March 16, 1962, as a result of a fracture in a valve body, hereinafter referred to as "The Valve", installed in a gas distribution system located in a contiguous street, and allege in this action that the defendant, Duriron, failed to furnish Anchorage Natural Gas Corporation, the owner of the gas distribution system, hereinafter referred to as the "Utility", with a ductile iron valve meeting ASTM Specifications A395–56T but, in violation of its agreement to sell, furnished a valve meeting the specifications of cast iron and that the difference in the physical properties of the metal of The Valve, as delivered, in contrast as to the physical properties of the valve which Duriron agreed to furnish proximately contributed to cause such injury and damage.

Plaintiffs and other persons similarly injured and/or damaged in said explosion commenced actions against Duriron:

1. Cases numbered 62–354 and 62–361 in the Superior Court for the

State of Alaska, Third Judicial District, hereinafter referred to as the "Alaska Superior Court Cases", and

2. Case Numbered 6139 in the United States District Court for the Western District of Washington, Northern Division, at Seattle, hereinafter referred to as the "Washington Federal Case",

claiming damages in the total sum of Two Million, One Hundred Eighty Six Thousand, Five Hundred Dollars ($2,186,500.00) for the same injuries for the same reasons asserted in the case at bar.

The *Utility* commenced actions against Duriron:

1. Case number 6147 in the United States District Court for the Western District of Washington, Northern Division, at Seattle,

2. A Cross Claim in the Alaska Superior Court Cases,

seeking a judgment against Duriron that it be saved harmless and indemnified against loss resulting from the claims of the persons injured or damaged in the explosion and from expense incurred in litigation commenced by the injured persons as the result of Duriron's failure to deliver a valve meeting the specifications Duriron agreed to furnish.

The Alaska Superior Court Cases proceeded to trial commencing October 4, 1966, by the Court, a jury having been waived. The Court rendered written Findings of Fact and Conclusions of Law, adopted November 10, 1966; finding:

1. That Duriron purchased The Valve from Kuhns, under a written order that the metal thereof be ductile iron meeting ASTM Specifications A395–56T;

2. That Kuhns made The Valve of cast iron, did not make it of ductile iron, meeting ASTM Specifications A395–56T, delivered The Valve to Duriron which thereafter sold and delivered it to the Utility;

3. That Duriron did not produce the condition of the metal of which The Valve was composed, was not negligent in assembling The Valve with the other parts thereof and was unable to discover that Kuhns made The Valve of metals which failed to meet the specifications for ductile iron;

4. That Kuhns was negligent in making and pouring the valve body casting and in its testing procedures which failed to discover the departure from ASTM Specifications A395–56T, which negligence was attributed, under Alaska law, to Duriron;

5. That the fracture in The Valve, the leak of natural gas therefrom, the explosion in the residences of the injured parties and the injury and damage they suffered, were the direct and proximate result of the negligence of Kuhns in failing to furnish The Valve composed of metal meeting the specifications of Duriron, the purchaser.

On December 1, 1966, the Court rendered Judgment for all plaintiffs in the Alaska Superior Court Cases, against Duriron, in the total sum of Seven Hundred One Thousand Three Hundred Seventy Two Dollars and Nine Cents ($701,372.09), with interest at six per cent (6%) per annum, of which Judgment plaintiffs herein were awarded the following sums:

1. Charles William Stephenson $264,480.71
2. Charles William Stephenson, as father and next friend of Cathy Stephenson, also known as Donna C. Stephenson 302,770.38
3. Charles William Stephenson and Nancy Stephenson 6,544.95
4. Norman Bakke and Leotta Bakke 102,678.93

The judgment rendered in the Alaska Superior Court Cases is final.

Plaintiffs are seeking judgment against Duriron in this Court in conform-

ity with the judgment rendered in the Alaska Superior Court Cases, with interest at six per cent (6%) per annum from December 1, 1966.

Plaintiffs also seek judgment in this Court, on their Supplemental Complaint against Kuhns and Hartford for the whole amount of the judgment rendered in the Alaska Superior Court Cases based on a written Agreement, dated September 15, 1966, hereinafter referred to as the "Assignment Agreement", under which Duriron and Aetna assigned a portion of their rights against Kuhns and Hartford to said plaintiffs.

Duriron and Aetna seek compensatory damages against Kuhns and Hartford, punitive damages against Hartford, a declaratory judgment and a mandatory injunction against Kuhns and Hartford with respect to the matters declared.

## FINDINGS OF FACT

Reasonable minds cannot disagree on the following:

(a) International Nickel Company holds a patent on a secret process for making an alloy, known as ductile iron, meeting ASTM Specifications A395–56T, which secret process was known to Kuhns, as a licensee of International Nickel Company;

(b) At all times with which the litigation is concerned, Duriron was not licensed, by the patent owner, to make ductile iron and was not informed as to the secret process or procedures necessary to the production of ductile iron castings;

(c) Ductile iron, in order to conform to ASTM Specifications A395–56T, has the following physical or mechanical properties;

| | |
|---|---|
| Minimum tensile strength, psi | 60,000 lbs. |
| Minimum yield strength, psi | 45,000 lbs. |
| Minimum elongation in 2″ test specimen | 15% |

——◆——

(d) Graphite (carbon) is an element which is present in both cast iron and ductile iron. Graphite is in flake or acicular form in cast iron. The secret process, licensed to Kuhns by International Nickel, renders graphite nodular in form in ductile iron. The presence of nodular graphite is necessary to produce the tensile strength and elongation (a quality of stretch) defined in ASTM Specifications A395–56T for ductile iron. The presence of flake graphite in a ferrous alloy eliminates the quality of elongation and produces physical properties of cast iron which is brittle and does not stretch;

(e) By an exhibit attached to its letter to Duriron, dated September 4, 1959, Kuhns specifically warranted that it would produce ductile iron meeting the physical properties set forth in said specification. Advertising brochures distributed by International Nickel Company and Kuhns listed "gas distribution systems" in enumerating recommended

uses for ductile iron meeting said Specifications;

(f) Duriron furnished Kuhns a drawing for a valve body casting conditioned that the material of construction be ductile iron meeting ASTM Specifications A395–56T, and thereafter issued purchase orders for ductile iron valves conditioned that the material of construction conform to the specifications shown on said drawing. Based on said purchase orders, Kuhns delivered The Valve to Duriron;

(g) Duriron required Kuhns to furnish reports, from a qualified independent testing laboratory, of the chemical composition of specimens of metal used in casting valve bodies sold to Duriron. The laboratory report, furnished by Kuhns to Duriron, having reference to the metal used in casting The Valve, indicated that the chemical composition conformed to the minimum requirements of ASTM Specifications A395–56T. The

chemical properties test, even though revealing conformity with the ASTM Specifications, does not insure that the alloy meets the minimum physical or mechanical properties of the ASTM Specifications. Physical or mechanical properties meeting the ASTM Specifications could be produced only if Kuhns followed the secret process and procedures International Nickel licensed it to use for making the ductile iron alloy;

(h) At the time involved in the litigation, in the absence of a test which fully destroyed the device, there was no way known whereby The Valve could be tested by Duriron to determine

> that the metallic structure contained graphite in flake condition instead of in nodular form uniformity throughout the alloy, or that the physical or mechanical properties of the alloy did or did not meet ASTM Specifications A395–56T;

(i) Upon the receipt of valve bodies from Kuhns, Duriron visually inspected the same for apparent defects, x-rayed valves, selected at random and, after machining some surfaces, sizing a Teflon liner within the valve body and on the plug, assembled the finished valve and submitted it to hydrostatic tests, none of which processes or tests changed, or were capable of changing, the alloy, of which the valve bodies were composed, or the physical or mechanical properties thereof;

(j) Duriron offered to sell The Valve to the Utility, through Delta Engineering Corporation, hereinafter referred to as "Delta", The Valve was purchased by and thereafter delivered to the Utility, and Duriron specifically warranted, by furnishing an exact copy of Kuhns' specific warranty that The Valve would be ductile iron meeting ASTM Specifications A395–56T.

(k) The physical and/or mechanical properties of The Valve conformed to the specifications for cast iron and did not meet the specifications for ductile iron described in ASTM Specifications A395–56T.

(*l*) Duriron sold The Valve in the ordinary course of its business after Kuhns manufactured and sold the same to Duriron. Duriron did not make the alloy and therefore was not negligent in producing the alloy of The Valve. It was powerless to discover that Kuhns failed to use ductile iron meeting ASTM Specifications A395–56T in casting The Valve. Duriron was not negligent in its work of assembling and testing The Valve nor in a manner proximately contributing to cause The Valve to fracture and fail in service in the hands of the Utility. Duriron did not make an express warranty, unauthorized by Kuhns, upon the sale of The Valve to the Utility and merely extended to the Utility, the warranty, in the same language, that Kuhns had made when it sold The Valve to Duriron.

(m) After installation of The Valve in the Utility's gas distribution system, natural gas entered the residence of plaintiffs, exploded and plaintiffs suffered injury to their persons and property in the explosion and resulting fire on March 16, 1962; thereafter, The Valve was discovered to be fractured and to be the source of the leak.

## FACTS RE HARTFORD'S DUTY TO DEFEND

The Hartford Accident and Indemnity Company (hereinafter referred to as Hartford) issued Policy No. 33–C–444406 (hereinafter referred to as the Hartford Policy) in the name of Kuhns Brothers. The Hartford Policy contained *a vendors endorsement,* which provided that such insurance as is offered by the policy with respect to Products Hazard applied also to any person or organization with respect to the distribution or sale, in the course of business of such person or organization of goods or products manufactured, sold, handled or distributed by the named insured, (Kuhns Brothers) subject to the provision that the insurance did not apply:

> (a) to liability arising from the negligence of such person or organization

(b) To any express warranty unauthorized by the named insured (Kuhns).

So far as is pertinent the Hartford policy defines "products hazard" to mean:

"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing * * *."

Hartford agreed under the policy to defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent.

Before the injured parties commenced litigation against Duriron, a representative of the insurance company covering the Utility, notified Duriron by letter of the explosion, the injuries, the damages resulting and of the claim that a failure in the body of the valve caused the gas leak which resulted in the explosion. By a letter dated *June 18, 1962* Duriron forwarded this communication to Kuhns Brothers and notified Kuhns Brothers that if a claim is made against Duriron as a result of a departure from the specifications in a part supplied by Kuhns Brothers, Duriron would look to Kuhns Brothers to save Duriron harmless in the matter.

In a letter to Hartford dated *June 23, 1963* Aetna on behalf of Duriron stated:

"The defendant Anthorage Natural Gas Company, in its answer to plaintiff's amended complaint and Cross Complaint, has asserted as its First Affirmative Defense: That on March 16, 1962 there was in place in a certain gas transmission line a 6 inch valve sold and furnished by Duriron Company which fractured allowing the natural gas carried and controlled thereby to escape. That such fracture was occasioned in whole or in part by a latent defect existing within said valve * * *. In the remainder of defendants pleadings and elsewhere there are further references to the subject valve * * *.

"Although the responsibility for the failure of the valve, if any, is that of your insured, Kuhns Bros. Co., it is not improbable that Duriron Co. may also be sued * * *."

"This Company and Duriron in particular, has just learned that under a policy written by you on Kuhns Bros., coverage is provided for vendors of products manufactured by Kuhns Bros. Notice is hereby given on behalf of Duriron that Duriron will expect from you the benefits due it as an insured under your policy."

In a letter dated *August 22, 1963* Duriron and Aetna notified Hartford & Kuhns Brothers (1) that in the Alaska case the Utility asserted, as an affirmative defense that the gas leak was caused by a defect in a six inch valve sold and furnished by Duriron and that the Utility requested that Duriron and Aetna assume the defense of the Alaska case and indemnify the Utility; (2) that investigation revealed that the valve body was cast by Kuhns Brothers and sold to Duriron under specifications requiring the valve to be composed of ductile iron; that the valve body, on analysis was discovered to be cast iron, a deviation from said specifications, and that the valve body was found to be fractured at a point contiguous to the place of the fire and explosion; (3) that the plaintiffs in the Alaska Superior Court Case No. 62–361 filed an amended complaint seeking recovery against Duriron based on Duriron's failure to furnish a valve meeting the specifications required by the Utility.

In the *August 22* correspondence Duriron and Aetna furnished Hartford and Kuhns a copy of the amended complaint in Alaska case No. 62–361 in which the

plaintiffs alleged in their third cause of action:

"That the defendant, The Duriron Company, Inc. supplied to an agent of the defendant, Anchorage Natural Gas Corporation, pursuant to certain specifications set forth in the purchase contract between said agent and the Duriron Company, Inc. one 6-inch gas main valve with the following identifying marks on its casting body: DURCO, TYPE 6, 150 GT DCL, GT 11 Patent Pending."

"That said valve was specified to be used in Street gas mains in the Anchorage, Alaska area and was to meet rigid specifications set forth by the agent of Anchorage Natural Gas Company."

"That the defendant, Duriron Company, Inc. with full knowledge of the rigid specifications required to be met by said valve and with full knowledge of its intended use warranted to Anchorage Natural Gas Corporation through its agent that said valve met said specifications and was fit for the use intended."

"That in fact the valve in question was greatly deficient and did not meet the specifications in many respects and thus the defendant, Duriron Company, Inc. breached its warranties to Anchorage Natural Gas Corporation and its agent."

"That the Duriron Company, Inc. was negligent and wanton and reckless in failing to check the valve to see if it met the specifications required and in turning loose on the public a gas main valve that failed to meet the requirements of the installers of same in Anchorage, Alaska."

"That as a direct and proximate result of the defendant, Duriron Company, Inc.'s breach of contract and warranty and negligent and wanton conduct plaintiffs were damaged as heretofore set forth in their other causes of action in this complaint."

"That plaintiffs were also third party beneficiaries to the contract between the defendants, Duriron and Anchorage Natural Gas Corp., and the breaking of that contract by the defendant, Duriron Company, Inc. as heretofore described was also a breaking of said contract as it applied to plaintiffs as third party beneficiaries and for this action plaintiffs are entitled to their damages as heretofore set forth for their injuries and damages as caused by said breach of contract and warranty."

Duriron and Aetna made demand that Hartford and Kuhns participate in the settlement negotiations which were currently under way between the plaintiffs and defendants in the Alaska cases, pay or contribute to the payment of the sum agreed upon for settlement, defend Duriron in the Alaska litigation and pay all expenses and that Kuhns require Hartford to provide a defense for Duriron in the Alaska cases as an insured by virtue of the Vendors Endorsement in the Hartford policy issued to insure Kuhns and its vendees.

In a letter dated *September 23, 1963* Duriron and Aetna informed Kuhns and Hartford that service of process had been attempted on Duriron to join it as a defendant in Alaska Superior Court Case No. 62–354 and made demand that Kuhns and Hartford defend Duriron in said case, pay the judgment or amount negotiated for settlement of the litigation and specifically provide Duriron a defense as an insured by virtue of the Vendors Endorsement in the Hartford policy issued to insure Kuhns and its vendees.

Enclosed with the September 23 letter was a copy of the amended complaint in Alaska Case No. 62–354 in which plaintiffs alleged for their third cause of action:

"Plaintiffs replend and incorporate herein all and the whole of their first and second causes of action.

"That the defendant, The Duriron Company, Inc. supplied to an agent of the defendant Anchorage Natural Gas Corporation pursuant to certain specifications set forth in the purchase contract between said agent and the Duri-

ron Company, Inc. one six-inch gas main valve with the following identifying markes on its casting body, DURCO, TYPE 6 150GT DCL, GT 11 Patent Pending.

"That said valve was specified to be used in street gas mains in the Anchorage, Alaska area and was to meet rigid specifications set forth by the agent of Anchorage Natural Gas Company.

"That the defendant, Duriron Company, Inc. with full knowledge of the rigid specifications required to be met by said valve and with full knowledge of its intended use warranted to Anchorage Natural Gas Corporation through its agent that said valve met said specifications and was fit for the use intended.

"That in fact the valve in question was greatly deficient and did not meet the specifications in many respects and thus the defendant, Duriron Company, Inc. breached its warranties to Anchorage Natural Gas Corporation and its agent.

"That the Duriron Company, Inc. was negligent and wanton and reckless in failing to check the valve to see if it met the specifications required and in turning loose on the public a gas main valve that failed to meet the requirements of the installers of same in Anchorage, Alaska.

"That as a direct and proximate result of the defendant, Duriron Company, Inc's breach of contract and warranty and negligent and wanton conduct plaintiffs were damaged as heretofore set forth in their other causes of action in this complaint.

"That plaintiffs were also third party beneficiaries to the contract between the defendant, Duriron and Anchorage Natural Gas Corporation, and the breaking of that contract by the defendant, Duriron Company, Inc. as heretofore described was also a breaking of said contract as it applied to plaintiffs as third party beneficiaries and for this action plaintiffs are

entitled to their damages as heretofore set forth for their injuries and damages as caused by said breach of contract and warranty."

In a letter dated *March 20, 1964,* Duriron and Aetna informed Kuhns and Hartford that Case No. 3009 was commenced in this court, wherein the persons who are plaintiffs in the cases pending in Alaska seek damages from Duriron; that these same plaintiffs commenced Case No. 6139 in the United States District Court for the Western District, Northern Division of Washington, at Seattle, seeking damages from Duriron, and that the Utility commenced Case No. 6146 in the United States District Court for the Western District, Northern Division of Washington, at Seattle, seeking a judgment against Duriron "in such sum that it will be reimbursed for all of the claims by the persons" as plaintiffs in the litigation which pends in Anchorage, Alaska. Duriron and Aetna made demand that Kuhns and its insurer Hartford defend Duriron in these three law suits, pay the judgment or the amount negotiated for the settlement of the litigation, and specifically to provide a defense for Duriron in the three law suits as an insured by virtue of the Vendors Endorsement in the Hartford policy issued to insure Kuhns and its vendees.

Enclosed with the March 20th letter were copies of the complaints filed by the plaintiffs in this Court and in the United States District Court, Western District of Washington and a copy of the complaint filed by the Utility against Duriron in the United States District Court, Western Division of Washington.

In the complaint filed in this case on March 2d, 1964 with the Court at Dayton, Ohio the plaintiffs alleged:

That prior to March 16, 1962, the defendant Duriron Company, Inc., for a valuable consideration had supplied to Anchorage Natural Gas Company, or its agents a 6″ GT 11 FE 150 valve sleeveline "G" type for use in the Anchorage Natural Gas Company gas distribution system in Anchorage, Alaska. That said

valve was warranted to be made of Ductile Iron and to conform to ASTM rating A395–56T Type 60–45–15 which required said valve to have a minimum tensile strength of 60,000 pounds per square inch, a minimum yield strength of 45,000 pounds per square inch and an elongation factor of at least 15%; that the defendant, Duriron Company, Inc. also warranted to Anchorage Natural Gas Company and its agents that its valves were all adequately tested before they were shipped to customers.

That on March 16, 1962, a valve in the Anchorage Natural Gas Company's gas distribution system in Anchorage, Alaska at 10th & Karluk Street broke and caused natural gas to leak into plaintiff's dwelling which then exploded and burned to the ground.

That upon examination of the broken valve it was learned that it was manufactured by the defendant, Duriron Company, Inc. and was of type 6 FT 11 FE 150 sleeveline "G". When tested said valve proved to be a mixture of Ductile Iron and Cast Iron with a tensile strength of 32,650 pounds per square inch, a yield strength of 31,550 pounds per square inch and an elongation factor of 2.1% and in addition said valve showed a casting shrinkage defect across the area of the break which reduces in strength 10% to 25%.

That the failure of said valve to meet the ASTM Specifications warranted for it and its casting shrinkage defect concurred with the negligence of Delta Engineering Company, Anchorage Natural Gas Corporation, Chesney Construction Company and National Mechanical Contractors, a joint venture in causing said valve to break and plaintiffs to be injured.

That the failure of said valve to meet warranted ASTM Specifications and its casting shrinkage defect were the direct and proximate result of the Duriron Company, Inc.'s negligence in said valves manufacture and negligence in the tests performed on said valve prior to its shipment and the defective valve was in breach of an express warranty made to Anchorage Natural Gas Company and its agents.

In the complaint filed by plaintiffs in the United States District Court, Western District of Washington plaintiffs set forth the same allegations as were alleged in the amended complaints filed in the Superior Court of Alaska. In the suit brought by the Utility against Duriron the Utility sought indemnity from Duriron on the grounds that the fire and explosion was caused by Duriron's breach of an express warranty to deliver a valve meeting the specifications required by the Utility.

By letter dated *May 24, 1965* counsel for Duriron informed Kuhns Brothers and Hartford that the Alaska Supreme Court had rejected Duriron's challenge to the venue and jurisdiction of the Alaska Superior Court and demanded that Kuhns Brothers and Hartford assume the defense of the Alaska cases.

Altogether, Duriron or Aetna acting on behalf of Duriron notified Kuhns Brothers and Hartford on six separate occasions that claims were being asserted against Duriron based on a defect in a six inch valve body which Duriron had purchased from Kuhns Brothers and demanded that Kuhns Brothers and Hartford assume the defense of the actions against Duriron. On each occasion Hartford informed Aetna and Duriron that it would not defend the actions.

WAS HARTFORD REQUIRED TO DEFEND DURIRON IN ALL OF THE LITIGATION INVOLVING THE VALVE?

■ The second syllabus of Lessak v. Metropolitan Casualty Ins. Co., 168 Ohio St. 153, 151 N.E.2d 730, 5 O.O.2d 442, provides:

"The sole test as to the duty of an insurance company, under a policy of liability insurance, to defend an action against the insured is the allegations of the petition in the action against the insured, and where such petition brings the action within the coverage of the policy, the insurer is required to make defense, regardless of the

ultimate outcome of the action or the liability to the insured. (Socony-Vacuum Oil Co. v. Continental Casualty Co., 144 Ohio St. 382, 59 N.E.2d 199, [29 O.O. 563], approved and followed)."

See also National Casualty Company v. Insurance Company of North America, 230 F.Supp. 617, at 622, and the Sixth, Seventh and Eighth syllabi of Chief Judge Connell's decision for the Northern District of Ohio, Eastern Division.

Hartford and Kuhns were promptly advised of the filings of the actions by the injured parties, furnished copies of the Complaints, and were requested to provide a defense for and to save Duriron and Aetna harmless from expense incurred and judgments, if any, were rendered. Kuhns and Hartford refused to assume the defense.

Kuhns actually knew, and Hartford was charged with Kuhns' knowledge, that it alone controlled the means to make or fail to make The Valve of ductile iron which conformed to ASTM Specifications A395–56T. It also knew that Duriron was incapable of changing the alloy or the properties thereof after it was made by Kuhns.

The complaints of the injured parties, as they were amended from time to time, and the Cross Claim of the Utility, specifically asserted, among other things, that Duriron's liability was based on a breach of warranty with respect to the specifications of the metal of which The Valve was composed. The language was sufficient to inform Hartford and Kuhns that damages were claimed to a matter covered by Hartford's Policy and the Vendors Endorsement.

The Complaint, filed in the captioned action, was unequivocal and could not fail to notify Hartford and Kuhns that this action is within the coverage of the policy so as to require Hartford to provide a defense for Duriron.

The Sixth Circuit's decision in the case of American Indemnity Co. v. Sears Roebuck & Co., 6 Cir., 195 F.2d 353 (1952), is determinative of this question. It held that the manufacturer's insurer was under a duty to defend Sears "if upon any ground (set forth in the complaint) there might have been a recovery within policy terms."

The Third and Fifth syllabi read as follows:

"3. Where liability policy insured furnace manufacturer against any liability for claims against him based on defects in its products and policy was extended by endorsement to include plaintiff, a retailer of product, and endorsement provided insurance afforded to retailer did not extend to liability arising from negligence of retailer or to any express warranty unauthorized by manufacturer and one count of buyer's petition in actions against retailer for death of members of buyer's family allegedly resulting from gas escaping from furnace was based on negligence of retailer, and the other on representations allegedly amounting to warranties relied on by buyer but not within exclusion clause strictly construed, unless warranties were unauthorized by manufacturer, insurer was under duty to defend the suit.

"* * *

"5. Where liability policy which insured furnace manufacturer against any liability for claims against it based on defects in its products and which policy was extended by endorsement to include plaintiff, a retailer of products except as to liability arising from negligence of retailer or to any express warranties unauthorized by manufacturer, even though one of claims of buyer against retailer after certain members of buyer's family was allegedly asphyxiated by gas escaping from furnace came within exceptions to coverage, insurer was under duty to defend, if on any ground there might have been a recovery within policy terms."

In the *Sears Case*, the Vendors Endorsement, which formed a part of the manufacturer's policy of insurance, was in language identical to the Vendors En-

dorsement which was attached to Hartford's Policy on Kuhns, with this one exception, i. e., Sears was specifically named and Duriron was not named in the endorsement.

Hartford's Vendors Endorsement is broader than the one adjudicated in the Sears case. It extends to every person purchasing a product manufactured by Kuhns, for resale. The Hartford endorsement included coverage for Duriron and all other Kuhns customers.

The facts in the *Sears Case* are precisely analgous to the facts in the captioned action with the irrelevant differences that

1. gas escaped from a defectively manufactured furnace instead of from a valve which failed to meet the specifications for ductile iron, and

2. the gas did not explode and burn the by-standers, it merely asphyxiated two persons and injured two others.

As in the captioned case, the complaints of the dead and injured persons contained allegations that Sears was negligent and breached its express warranty. Like Duriron, Sears tendered the defense of the case to the insurer and the manufacturer which declined, as did Kuhns and Hartford, to defend, on the grounds that the Vendors Endorsement excepted coverage:

1. as to claims arising from Sears' negligence, and

2. as to liability based upon unauthorized express warranty by Sears.

At page 356 of the reported decision, Circuit Judge Simons wrote:

"Unless the warranties were unauthorized by Samuel, the American was under duty to defend the suits. *Maryland Casualty Company v. Moritz*, Tex.Civ.App.1940, 138 S.W.2d 1095. The District Court found, as a fact, that the warranties made by Sears were authorized by Samuel. There is substantial evidence supporting the finding."

In the case at bar, the evidence reveals that Kuhns' chief metallurgist enclosed a three-page written warranty with a letter to Duriron stating that valves which Kuhns proposed to make and sell to Duriron, for resale, would be composed of ductile iron conforming with ASTM Specifications A395–56T.

Duriron's only warranty to the purchaser of The Valve was in the same language as Kuhns' warranty to Duriron. It furnished the Utility with an exact copy of Kuhns' three-page written warranty. At the trial, Kuhns offered no evidence that Duriron was not authorized to state, to a prospective purchaser, that The Valve would be made of ductile iron meeting ASTM Specifications A395–56T. Duriron's warranty cannot be deemed to be unauthorized by Kuhns, nor a departure from the representations made by Kuhns to Duriron.

The Sixth Circuit held:

1. That if the insurer was to escape liability for failing to defend and indemnify Sears, the insurer had the burden of proof to bring the action within the exceptions contained in the Vendors Endorsement;

2. That the insurer failed to maintain its burden of proof and that the provisions of the policy of insurance, having been composed by the insurer, must be strictly construed against the draftsman;

3. That it was unnecessary to consider the issues of negligence asserted against Sears for the reason that the allegations of breach of warranty were sufficient, standing alone, to impose a duty upon the insurer to defend the litigation.

If the insurer had been able to maintain its burden to prove, in the *Sears Case* or in this case, that the warranty made by the seller was not authorized by the maker of the device, the insurer would have escaped the obligation to pay the judgments rendered. But, even in such event, the insurer could not escape the duty to defend Sears and Duriron, or liability for the expense incurred in defending, upon refusing to do so.

The warranties made in this and the *Sears Case* having been constructively authorized and breached by the manufacturer, the insurer of the manufacturer must pay the judgments which were rendered for damages resulting from said breach.

■ This Court has the benefit of and is bound by the Findings of Fact and Conclusions of Law rendered by the trial court in the Alaska Superior Court Cases. The Findings specifically adjudicate that Duriron was free of any negligence proximately contributing to create the defective condition of The Valve and that Kuhns alone was liable for creating a defective condition, in breach of its warranty, which Duriron was unable to discover.

Under the authority of the *Sears* and *Lessak* cases, Hartford was required to defend Duriron in all of the litigation involving The Valve.

## FULL FAITH AND CREDIT CLAUSE OF THE UNITED STATES CONSTITUTION

Briefly by their Supplemental Complaint, the plaintiffs seek:

1. to enforce in this court the judgment obtained in the Superior Court of Alaska against Duriron and
2. to the extent that Duriron is insured by Hartford, to enforce the Alaska judgment against the insurer, and,
3. to enforce their rights under the assignment agreement against Kuhns & Hartford.

■ Under the full faith and credit clause in Article IV Section 1 of the United States Constitution this Court is required to enforce the Alaska Superior Court judgment against the judgment debtor, Duriron, if the Alaska Court has jurisdiction over the judgment debtor. Duriron does not challenge the jurisdiction of the Alaska Court which rendered judgment against it. Duriron challenged the jurisdiction of the Alaska Superior Court which dismissed Duriron

from the Alaska cases but upon plaintiffs' appeal the Alaska Supreme Court reversed the lower court and held that the lower court had in personam jurisdiction over Duriron. Duriron filed a petition for writ of certiorari with the United States Supreme Court seeking reversal of the decision of the Alaska Supreme Court but the United States Supreme Court refused to grant the petition for certiorari.

■ Plaintiffs can enforce the Alaska judgment against Kuhns and Hartford by virtue of the assignment of Duriron's rights against Kuhns Brothers and Hartford under the rule that one who is liable over to another and is given prompt notice of the action against one to whom he is liable over and is given full opportunity to defend the action, is bound by the judgment rendered, whether he appeared or not.

Under an assignment agreement Duriron and Aetna assigned a portion of their rights against Kuhns Brothers and Hartford, to indemnity and to damages for breach of contract and breach of warranty, reserving to themselves the right to recover from Kuhns and Hartford for expenses incurred in the defense of the Alaska litigation.

■■ Under Ohio law a claim arising out of breach of contract may be assigned to another. Central Ohio Natural Gas & Fuel Co. v. Capital City Dairy Co., 60 Ohio St. 96, 53 N.E. 711, 64 L.R.A. 395. A partial assignment is valid in Ohio and the assignee may enforce his claim in a proceeding in equity. Pittsburg C. C. & St. L. Ry. Co. v. Volkert, et al., 58 Ohio St. 362, 50 N.E. 924.

■ Plaintiffs seek recovery against Kuhns Brothers and Hartford under an assignment of Duriron's rights. The assignment is founded upon a valid judgment which Duriron and Aetna could enforce against Kuhns Brothers and Hartford had they not assigned these rights to plaintiffs. The fact that Kuhns Brothers and Hartford are not judgment debtors is irrelevant. Kuhns and Hartford, having failed to defend the Alaska

cases, are bound by the judgment rendered against Duriron. The Alaska judgment is entitled to full faith and credit under the United States Constitution. Titus v. Wallick, 306 U.S. 282, 59 S.Ct. 557, 83 L.Ed. 653; Armstrong v. Armstrong, 117 Ohio St. 558, 160 N.E. 34, 57 A.L.R. 1108.

One case in Ohio, among a great many, too numerous to cite, bearing on the question is Hopper v. Nicholas, 106 Ohio St. 292, 140 N.E. 186, which held that a record of adjudication by a court of record of another state properly authenticated is entitled to full faith and credit in the courts of the State of Ohio under Article IV, Section I of the United States Constitution.

## THE DUTY OF DURIRON TO TEST THE VALVE

Kuhns Brothers gave Duriron an express warranty that the value bodies manufactured by Kuhns were composed of ductile iron meeting ASTM Specifications A395–56T. Duriron required Kuhns to furnish reports from an independent testing laboratory. These reports indicated that the chemical composition of the metal out of which the valve bodies were poured conformed to the formula for making ductile iron. Upon receipt of the valve bodies Duriron inspected for apparent defects, x-rayed valves selected at random and subjected each valve to hydrostatic tests. None of these testing procedures were capable of revealing whether or not the valve bodies were made of an alloy having physical and mechanical properties conforming to the requirements of ASTM Specifications A395–56T. There was no test known to metallurgic science, with the exception of a test requiring the complete destruction of each valve body, whereby Duriron could determine whether or not the valve bodies were composed of ductile iron meeting the Specifications as warranted by Kuhns Brothers. The failure of the valve bodies to meet said Specifications was a latent defect which could not be discovered by Duriron.

██ Under Ohio law no duty is imposed upon a retailer to inspect or test for a latent defect in a product purchased from a manufacturer. Landon v. Lee Motors, Inc., 161 Ohio St. 82, 118 N.E.2d 147.

In Landon v. Lee Motors, Inc., supra, the Ohio Supreme Court stated at pages 101–102, 118 N.E.2d at page 158:

"No liability can be imposed upon defendant for its alleged failure to discover a latent defect, unless the evidence shows that it undertook to do so and negligently failed to discover the defect."

"It is true defendant sold the automobile to plaintiff but that would not make it liable for a latent defect of which it had no knowledge. Any such liability would be upon the manufacturer, * * *."

See also Marsh Wood Products Co. v. Babcock & Wilcox Co., 207 Wis. 209, 240 N.W. 392 in which the Wisconsin Supreme Court held that the liability of a manufacturer of boiler tubes for a defect in said tubes was not eliminated by the fact that the vendee of the boiler tubes was expected to conduct certain tests which would not have disclosed the defect in the steel used in manufacturing the tubes.

In United Pacific Ins. Co. v. Balcrank, Inc., 175 Ohio St. 267, 193 N.E.2d 920, Ohio Supreme Court held that a retailer* which is held liable to a purchaser for negligence in failing to discover a defect in a product sold to the retailer by a manufacturer can recoup its loss against the manufacturer on the basis of a breach of warranty.

In United Pacific Ins. Co. v. Balcrank, supra the Ohio Supreme Court stated at page 923 of 193 N.E.2d:

" * * * the fact that the buyer of an article becomes liable in damages to a third person for injuries arising from a defect in such article due to the buyer's negligence does not preclude the buyer from recouping his loss from the seller on the basis of a breach of warranty. * * * "

██ Under the authority of the *United ed Pacific Ins. Co.* case Duriron, which

was held secondarily liable for the negligence of Kuhns Brothers and plaintiffs as assignees of Duriron can recover against Kuhns Brothers for breach of warranty.

In American Radiator and Standard Sanitary Corporation v. The Titan Valve and Manufacturing Company, 246 F.2d 947, the Court of Appeals for the Sixth Circuit held that a manufacturer could not recover for indemnity against a supplier of a component part due to a defect in the part furnished by the supplier because the failure of the manufacturer to make a "simple test which would have discovered the defect" constituted active negligence on the part of the manufacturer. The American Radiator case is clearly distinguishable from the present case. In the present case there was no simple test available whereby Duriron could have discovered the failure of the valve bodies to meet the specifications. In order to ascertain whether the physical properties of the valve bodies conformed to the representations made by Kuhns Brothers, Duriron would have had to destroy each valve body. The law does not impose such an impossible burden upon a manufacturer who purchases a part from a supplier.

## LIABILITY OF KUHNS BROTHERS

Kuhns Brothers having failed to make the valve of ductile iron meeting ASTM Specification A395–56T breached its contract to do so. Duriron exercised ordinary care and was not negligent in assembling, testing or selling the valve.

In the present action, under the Findings of Fact, Conclusions of Law and the Judgments rendered in the Alaska Superior Court, Duriron was held secondarily liable for the negligence of Kuhns Brothers. Such adjudication is binding on this Court in this action. Kuhns Brothers, as the person primarily liable having been fully and fairly informed of plaintiffs' claim and the pendency of the Alaska action and given full opportunity to defend, is bound by the Findings, Conclusions and Judgments rendered in the Alaska Superior Court cases. Hessler v.

Hillwood Manufacturing Company, 302 F.2d 61 (1962); Metcalf v. Hartford Accident & Indemnity Company, 176 Neb. 468, 126 N.W.2d 471 (1964); Hendershot v. Ferkel, 144 Ohio St. 112, 56 N.E.2d 205 (1944).

In a subsequent action by a retailer to compel a manufacturer to satisfy a judgment obtained against a retailer by an injured party in a prior action, the pleadings and judgment in the prior action is conclusive against the manufacturer who declines to defend the prior action and would serve to establish the facts necessary to show the right of the retailer to recover from the manufacturer. Frank R. Jelleff, Inc. v. Pollack Brothers, Incorporated, 171 F.Supp 467, 471 (D.C.1957); Liberty Mutual Ins. Co. v. J. R. Clark Co., 239 Minn. 511, 59 N.W. 2d 899 (1953).

In the case of United Pacific Insurance Co. v. Balcrank, supra the Ohio Supreme Court held that where the buyer of an article has been compelled to pay damages to a person for injuries caused by the defective condition to such article, manufactured and supplied by the seller thereof, the buyer has a right of action against the seller based on breach of warranty.

The Ohio Supreme Court stated at page 923 of 193 N.E.2d:

"* * * Where there is a breach of warranty by the manufacturer and seller of a product, he is subject to strict liability, and the recovery of damages from him for the breach does not depend on negligence or actual knowledge of a defective condition. [Citing Cases]."

"In short, the fact that the buyer of an article becomes liable in damages to a third person for injuries arising from a defect in the article due to the buyer's negligence does not preclude the buyer from recouping his loss from the seller on the basis of a breach of warranty. * * * [Citing Cases]."

In Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E.2d 612,

75 A.L.R.2d 103 (1958) the Ohio Supreme Court stated in syllabus 2:

"An express warranty is an affirmation of fact by the seller as to a product or commodity to induce the purchase thereof, on which affirmation the buyer relies in making the purchase."

Kuhns made an affirmation of fact as to The Valve to induce Duriron to purchase the same and Duriron relied on such affirmation, that the metal would meet ASTM Specifications A395–56T, in purchasing the same—all of which amounted to an express warranty within the definition funished by the Ohio Supreme Court in Rogers v. Toni Home Permanent Co., supra.

 Kuhns breached its express warranty and was negligent in failing to furnish The Valve composed of ductile iron, having the mechanical or physical properties set forth in ASTM Specifications A395–56T, by reason thereof, Duriron and Aetna as its insurer subrogee, shall have declaratory judgment that they be saved harmless and be indemnified by Kuhns for any damages and expense suffered as a result thereof. United Pacific Insurance Company v. Balcrank, supra; Hessler v. Hillwood Manufacturing, supra.

Third party defendants recognize the rule of full faith and credit but assert that plaintiffs cannot enforce the Alaska judgments against Duriron and/or Kuhns Brothers and Hartford because (1) plaintiffs' direct action against Kuhns Brothers and Hartford is barred by the Ohio two year statute of limitations on actions for personal injuries and injuring personal property; (2) plaintiffs are estopped from enforcing the Alaska judgment against Duriron and/or Kuhns Brothers and Hartford by the provisions of the assignment agreement (3) the Alaska judgment was procured by fraud and collusion

## DEFENSE OF STATUTE OF LIMITATIONS

 The Ohio two year statute of limitations (2305.10 Ohio Revised Code) is inapplicable to the present case. Plain-tiffs are not seeking to recover against Kuhns Brothers and Hartford for bodily injury or damage to personal property. Plaintiffs are seeking to enforce against Kuhns Brothers and Hartford, pursuant to the assignment from Duriron, Duriron's rights against Kuhns Brothers based on implied contract for indemnification and breach of warranty and Duriron's rights against Hartford based on breach of the written insurance contract. An action for breach of an implied contract for indemnification is governed by the Ohio six year statute of limitations on actions upon oral contracts (2305.07 Ohio Revised Code) and not the Ohio two year statute of limitations. American Insurance Group v. McCowin, 7 Ohio App.2d 62, 218 N.E.2d 746 (1966). An action for breach of a written contract is governed by the Ohio fifteen year statute of limitations on actions upon written contracts 2305.06 Ohio Revised Code. Under the assignment agreement plaintiffs have succeeded to Duriron's respective causes of action against Kuhns Brothers and Hartford. These causes of action did not accrue until 1966 when Kuhns Brothers and Hartford failed to defend the Alaska cases and a judgment was rendered against Duriron. Plaintiff's action to enforce its rights under the assignment from Duriron was brought in 1967 and was commenced within both the six year and fifteen year statute of limitations.

## DEFENSE OF ESTOPPEL

 Under the assignment agreement plaintiffs obtained the rights of Duriron and Aetna to recover from Kuhns Brothers and Hartford on the grounds of Kuhns' Brothers primary negligence and breach of warranty and breach of the duty to defend. Under the assignment plaintiffs agreed not to attempt to execute the Alaska judgment against the assets of Duriron and Aetna in exchange for the assignment of rights and Duriron's agreement to pay a maximum sum of ᵩ50,000.00 in the event plaintiffs failed to obtain a judgment against Duriron or failed to collect any judgment rendered against Kuhns Broth-

ers and Hartford within five years. Third party defendants contend that since the agreement insulated Duriron and Aetna from any obligation to pay the Alaska judgment and Duriron and Aetna have paid nothing under the agreement, no right to indemnity existed in Duriron and Aetna and the plaintiffs whose rights under the agreement are no greater than those of Duriron and Aetna, are also precluded from recovering.

This contention of third party defendants is without merit. Plaintiffs by virtue of the assignment received the rights of Duriron and Aetna to enforce the Alaska judgment against Kuhns Brothers and Hartford. Since Kuhns Brothers and Hartford breached their duty to defend the Alaska cases, the judgment is binding on them in absence of fraud or collusion. McGhee, Attorney General v. Casualty Co. of America, 15 Ohio App. 457 (1921) Hendershot v. Ferkel, supra.

Once the third party defendants declined to defend the Alaska case, Duriron had the right to make a reasonable settlement or compromise of the action against it. Aetna Casualty & Surety Co. v. Buckeye Union Casualty Co., 157 Ohio St. 385, 105 N.E.2d 568, 31 A.L.R.2d 1317 (1952). Milbank Mutual Insurance Co. v. Wentz, 352 F.2d 592 (C.A. 8 1965). See 30 O.Jur.2d Insurance Section 648. Duriron had every right to assign its claims against Kuhns Brothers and Hartford in exchange for an agreement from plaintiffs that would limit its potential liability to $50,000.00. If Duriron had not assigned its claims to plaintiffs, Duriron would have had the duty of paying the judgment rendered together with interest and costs. Hartford and Kuhns Brothers were given numerous opportunities to participate in settlement discussions and to defend the Alaska cases. Kuhns Brothers and Hartford, having declined to assume the defense of the Alaska cases are in no position to complain that Duriron seized the opportunity to limit its potential liability by assign-ing to plaintiffs its claims against Kuhns Brothers and Hartford. If Kuhns and Hartford objected to the assignment agreement they should have exercised their right to participate in settlement discussions and to defend the Alaska cases.

There are no Ohio cases determining the effect of the type of agreement involved in this case. Outside Ohio the Nebraska Supreme Court in the case of Metcalf v. Hartford Accident and Indemnity Company, 176 Neb. 468, 126 N.W.2d 471 (1964) considered the effect of an agreement in which the insured and plaintiff consented to a judgment and the plaintiff judgment creditor agreed not to attempt execution upon the insured's assets. The judgment creditor brought suit against Hartford, the insurance company and Hartford argued that under the terms of the agreement the judgment created no legal obligation to pay on the part of the insured and therefore, Hartford had no duty to pay the judgment. The Nebraska Supreme Court upheld plaintiffs' right to recover against the insurance company holding that the insured "was entitled to use all reasonable means of avoiding personal liability;" and that it was in the best interest of the insured to consent to a judgment and accept plaintiffs' agreement not to execute on his property "other than any rights to indemnity he might have in the designated insurance policies."

In Metcalf v. Hartford Accident and Indemnity Company, supra the Court stated 126 N.W.2d at page 476:

"* * * The matter is of no consequence to defendant if its claim of nonliability is correct. Since its claim of nonliability had no validity, and it having declined to defend the action when called upon to do so, the defendant is in no position to attack the judgment in absence of fraud, collusion or bad faith. If the judgment was obtained in good faith, the insured may not again litigate the issues that resulted in the judgment. * * *"

## DEFENSE OF FRAUD

Hartford asserts as an affirmative defense that the judgments rendered in Alaska were procured by fraud.

■ The burden is upon the insurance company to establish that the judgment was obtained through fraud. There is no evidence before the Court establishing that the Alaska judgments were procured by fraud. Based on the record of the Superior Court of Alaska wherein the judgments were rendered, the judgments appear to be regular in all respects and valid.

■ To establish fraud Hartford relies upon the fact that Duriron, Aetna, plaintiffs and the other co-defendants entered into an assignment agreement prior to the trial of the Alaska cases. Under this agreement Duriron and Aetna agreed to assign to plaintiffs the rights to indemnification, as asserted in the third party action and to pay a maximum amount of $50,000.00 in the event Duriron obtained a judgment in its favor. In consideration for the assignment, plaintiffs agreed not to attempt execution upon the assets of Duriron or Aetna, in the event plaintiffs obtained a judgment, but to rely upon the assignment of Duriron's and Aetna's rights against Hartford and Kuhns Brothers. The co-defendants agreed to release Duriron from all claims for indemnity.

■ It is well established that when an insurance company wrongfully refuses to defend an action against the insured, the insured is entitled to make a reasonable settlement or compromise of the action against him. Duriron and Aetna had a right to limit the potential loss that might arise from the Alaska litigation by entering into the assignment agreement. The agreement does not establish that the judgment was procured through fraud and collusion.

In July 1964, plaintiffs and the co-defendants other than Duriron entered into an option of settlement offer in which the parties agreed that plaintiffs would not offer evidence against those co-defendants and would consent to the dismissal of the co-defendants from the case in exchange for the agreement by the co-defendants to pay the difference between the judgment recovered if any against Duriron and $200,000.00 and to share the trial expenses. At the trial plaintiff consented to the dismissal of the co-defendants other than Duriron. The agreement and the subsequent dismissal of the co-defendants does not establish fraud or collusion. Plaintiffs and the co-defendants were entitled to make a reasonable settlement of the action against the co-defendants. The plaintiffs had every right to make a reasonable settlement of the case with the co-defendants and then to consent to their dismissal from the case.

## DEFENSE OF NON-PAYMENT OF ALASKA JUDGMENTS

■ The fact that Duriron has not paid the Alaska judgments does not eliminate Kuhns Brothers obligation to Duriron as the party primarily liable. The Ohio courts have never held that payment or satisfaction of the judgment rendered against a person secondarily liable is a prerequisite to the right of indemnification by the person secondarily liable.

In the case of Dayton Fabricated Steel Co. v. Dayton Town and Country, Inc., 99 Ohio App. 309, 314, 133 N.E.2d 423 (1954) the Court of Appeals for Montgomery County held that a party secondarily liable under a contract was not obligated to wait until the suit against it was resolved but was entitled to an order requiring persons primarily liable "to defend the action * * * and to pay all damages which might eventually be assessed against the defendant (indemnitee) and costs arising by reason of the action."

■ Furthermore plaintiffs can obtain but one recovery either against Kuhns for the defect in the valve bodies or against Hartford on its policy. As a practical matter Hartford as insurer of Kuhns Brothers and as Duriron's insurer under the vendors endorsement is obligated to pay the judgments rendered.

Hartford cannot avoid its obligation to pay under the policy on the ground that the insured has not paid the judgments. Under Ohio law an insurer is required to pay judgments rendered against its insured and may not wait until the insured has paid the judgment. Section 3929.05 Ohio Revised Code provides:

"Whenever a loss or damage occurs on account of a casualty covered by a contract of insurance made between an insurance company and any person, firm, or corporation, by which contract such person, firm or corporation is insured against loss or damage on account of the bodily injury or death by accident of any person for which loss or damage such person, firm, or corporation is responsible, *the liability of the insurance company is absolute,* and *the payment of said loss does not depend upon the satisfaction by the assured of a final judgment against him* for loss, damage, or death occasioned by such casualty."

In the present case plaintiffs have obtained a judgment against Duriron as to an occurrence within the coverage of the Hartford policy. Under the statute Hartford's liability is absolute and its obligation to pay is not dependent upon the prior payment of the judgment by Duriron. Stacey v. Fidelity and Casualty Co. of New York, 114 Ohio St. 633, 151 N.E. 718 (1926); Luntz et al, Exrs. v. Stern, 135 Ohio St. 225, 20 N.E.2d 241 (1939).

### DEFENSE OF RELEASE

Third party defendants, Kuhns & Hartford assert as an affirmative defense that the assignment agreement constituted a release of Duriron which prevents plaintiffs and Duriron from recovering against Kuhns and Hartford. Under Ohio law where the plaintiff has a claim against two or more concurrent tort-feasors, a general release of one extinguishes the cause of action and discharges the other alleged tort-feasor, but where plaintiff covenants not to sue one concurrent tort-feasor, the cause of action is not extin-

guished, and the other tort-feasors are not discharged. Davis, Admx. v. Buckeye Light & Power Co., 145 Ohio St. 172, 61 N.E.2d 90 (1945); Connelly v. United States Steel Co., 161 Ohio St. 448, 119 N.E.2d 843 (1954); Bacik v. Weaver, 173 Ohio St. 214, 180 N.E.2d 820 (1962). The Ohio Supreme Court has also held that when a plaintiff has a claim against two tort-feasors, the liability of the other being secondary, and executes for valuable consideration a covenant not to sue in favor of the one primarily liable, the consideration therefor being only for partial satisfaction of plaintiff's damages, such covenant is not a bar to plaintiff's action against the one secondarily liable. Diamond v. Davis Bakery, Inc., 8 Ohio St.2d 38, 222 N.E.2d 430 (1966).

Under the agreement Duriron and Aetna assigned a portion of their rights against Kuhns & Hartford in exchange for plaintiff's covenant not to levy execution or attempt collection of the judgments if any were recovered against Duriron. Under the provisions of the agreement plaintiffs specifically reserved their right to litigate their claims against Duriron to judgment and Duriron reserved the right to seek a judgment in its favor. All the parties to the agreement, plaintiffs, Duriron and Aetna, specifically retained their rights to enforce their respective claims against Kuhns and Hartford.

 The assignment agreement is not a release but a "covenant not to execute." Since the Court has found no controlling Ohio law concerning the question of whether a "covenant not to execute" bars a subsequent action by plaintiffs against a concurrent tort-feasor who is primarily liable, this Court is free to exercise independent judgment in the matter and to adopt the rule considered sound and supported by the best reasoning method. Oxley v. Ralston Purina Company, 349 F.2d 328 (C.A. 6, 1965). The Court determines that the better rule is that a "covenant not to execute" given a party secondarily liable has the same legal effect as a "covenant not to sue" and does not bar plaintiff's subse-

quent action against a party primarily liable.

Decisions from other jurisdictions have considered this question and uniformly held that a "covenant not to execute" is so closely akin to a covenant not to sue, that its legal effect should be held to be similar and that it is not such an instrument as will operate to release other joint tort-feasors. Pellett v. Sonotone Corp., 26 Cal.2d 705, 160 P.2d 783, 160 A.L.R. 863 (1945); Southern Pacific Co. v. Raish, 205 F.2d 389 (C.A. 9, 1953). The Court believes that the Ohio Supreme Court would reach the same conclusion on the question had it been before it for determination.

In the case of Zander v. Casualty Insurance Company of California Cal.App., 66 Cal.Rptr. 561 (1968) the California Court of Appeals considered the effect of a "covenant not to execute" given by an injured party to an insured whose insurance company refused to defend. The Court stated at page 568:

"Although the question appears to be one of first impression in California, the rule is settled in other jurisdictions that where the insurer has repudiated its obligation to defend a defendant in the absence of fraud may, without forfeiture of his right to indemnity, settle with the plaintiff upon the best terms possible, taking a covenant not to execute. Moreover, the giving of such a covenant by plaintiff (the injured party) does not bar his subsequent action directly against the insurer. (See e. g., Mitchell v. Farmers Insurance Exchange (Mo. 1965) 396 S.W.2d 647; Metcalf v. Hartford Accident & Indemnity Co. (1964) 176 Neb. 468, 126 N.W.2d 471). The reason for the rule, rather obviously, is that the injured party should not be penalized for an attempt to minimize his damages. We adopt it as applicable in California."

Under the assignment agreement plaintiffs granted a "covenant not to execute" and agreed to dismiss the complaint filed against Duriron in this Court. Third party defendants contend that these provisions cannot be ignored and estop plaintiffs from enforcing the Alaska judgment against Duriron and Aetna.

This contention is without merit. The assignment agreement merely bars plaintiffs from seeking execution of the Alaska judgment against Duriron and expressly reserves plaintiffs' rights to enforce their assigned rights against Kuhns and Hartford. The assignment agreement does not bar a recovery by plaintiffs under their supplementary complaint in which plaintiffs do not seek execution of the Alaska judgment against Duriron and bring a direct action to enforce against Kuhns and Hartford the rights plaintiffs received under the assignment from Duriron and Aetna.

## CLAIM OF THIRD PARTY PLAINTIFFS—ABUSE OF PROCESS

 Following the trial of the Alaska Superior Court Cases and the adoption of Findings of Fact, Conclusions of Law and the rendition of judgment, Duriron filed the available post-trial motions which were overruled and thereafter Hartford employed an Alaska lawyer who, without seeking or obtaining the consent of Duriron and Aetna and without notice to Duriron or Aetna, signed Duriron's name to an appeal bond, a notice of appeal and thereafter notified Duriron's lawyer that appellate action was being taken on behalf of Hartford.

In the appellate proceedings, hereinafter referred to as "Hartford's Appeal", Hartford used Duriron's name in filing motions and memoranda, making it appear that Duriron made the allegations therein asserting falsely with knowledge of the falsity or with utter disregard for the truth of the statements, that Duriron

1. agreed with the other parties in the Alaska Superior Court Cases that judgment be rendered against Duriron,

2. did not resist plaintiffs' claim for damages nor plaintiffs' attempt to prove Kuhns negligent and did not defend the litigation,

3. entered into an agreement with the parties to the Alaska Superior Court cases regarding the introduction and withholding of evidence and failed to inform the Trial Court of the existence of the Assignment Agreement and that Duriron acted so as to abuse the Alaska courts,

4. participated in a fraud, misrepresentation or other misconduct justifying the allowance of Rule 60(b) motions to set aside the judgment.

Further, Hartford asserted that the Trial Court erred in finding

1. Kuhns negligent in making, testing and delivering The Valve to Duriron when it failed to meet ASTM Specifications A395–56T,

2. that Kuhns breached its contract with Duriron to deliver a ductile iron valve,

3. that Duriron relied on and had a right to rely on Kuhns to cast The Valve with ductile iron,

4. that Duriron had no duty to test the castings, and

5. that The Valve broke as a direct and proximate result of Kuhns' negligence.

Further, it asserted generally, the same charges of fraud and collusion by Duriron and Aetna which are set forth as affirmative allegations of Hartford and Kuhns in their pleadings. And that said appellate proceeding was not bona fidely initiated for the benefit of Duriron but was initiated with intent to benefit Hartford to the detriment of the interests of Duriron and Aetna.

Contemporaneous with Hartford's Appeal, Hartford commenced an action in the United States District Court for Alaska, being case No. A–15–67 on the docket thereof, hereinafter referred to as the "Alaska Federal Case", against Duriron and others and attempted to join Aetna as an additional party thereto, claiming compensatory damages in the sum in excess of Seven Hundred Thousand Dollars ($700,000.00) and punitive damages in the sum of One Million Dollars ($1,000,000.00) asserting, generally, the same charges of fraud and collusion which are set forth as affirmative allegations of Hartford and Kuhns in their pleadings filed in this action.

Duriron and Aetna, through its counsel, protested Hartford's action in Hartford's Appeal and Hartford ignored the protests. Duriron ultimately obtained orders from the Alaska Supreme Court and the Alaska Superior Court preventing Hartford's lawyer from continuing to speak in or use the Duriron name in Hartford's Appeal.

Hartford's conduct in the Hartford Appeal and its commencement of the Alaska Federal Case was malicious, vexatious, and the actions were taken with intent to harm, oppress, harass and coerce Duriron and Aetna to assume and pay the lawful obligations, debts and/or duties of Hartford and Kuhns.

The most recent case in the Sixth Circuit is Skarbinski v. Henry H. Krause Co., et al., 378 F.2d 656, 657 (6 Cir. 1967).

"Sum and substance of suit for malicious prosecution is that there must be malice either in institution or in continuing the prosecution.

"Concerning malicious prosecution, it is not 'malice' in common acceptance of term that is the necessary ingredient, but rather malice in the legal sense of a wrongful act intentionally done without just cause.

"The 'Malice' sufficient to support cause of action for malicious prosecution may be either express or implied and has been defined as that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another."

In using Duriron's name in the manner and for the purpose for which it was employed in the Hartford Appeal, Hartford actually and constructively seized the person and property of Duriron to lawlessly benefit and serve the nefarious purposes of Hartford and harm Duriron.

Such conduct is a malicious prosecution which requires the award of punitive damages for Duriron and Aetna against Hartford, in this action.

Hartford used Duriron's name in connection with the Hartford Appeal for almost one year. It was actively pressing the Alaska Federal Case at the time of the trial of the captioned action, over a period of time in excess of one year. Punitive damages are assessed in the sum of Twenty-five Thousand Dollars ($25,000.00) to discourage such abuse of process.

Hartford is hereby ordered to dismiss, with prejudice at its cost, the Alaska Federal Case insofar as it asserts claims against Duriron, Aetna or plaintiffs herein and are enjoined against the commencement of any other action in any other court against Duriron, Aetna or plaintiffs therein, directly or indirectly arising out of the transaction or occurrence which is the subject matter of plaintiffs' claims against any party hereto, Duriron and Aetna's claims against Kuhns and Hartford, Kuhns and Hartford's claims against Duriron, Aetna or plaintiffs herein.

Judgments, Declaratory judgments and Mandatory Injunction shall issue with respect to the foregoing, in favor of plaintiffs, third party plaintiffs and against Hartford and Kuhns and the costs of this action shall be taxed against said Hartford and Kuhns.

## DISMISSAL OF COUNTER CLAIM OF THIRD PARTY DEFENDANTS

By entry on January 22, 1968 this Court made findings of fact and conclusions of law dismissing the counterclaim, filed in this action, holding that said third-party defendants, in the trial thereof, did not show any right to relief against third-party plaintiffs.

Thereafter, a motion of third-party defendants for a new trial on the counterclaim was filed. Said motion is denied.

There was also filed by third-party defendants a motion to amend and strike findings and conclusions under Rule 52(b) and after consideration, thereof, said motion is denied.

Said Court has delayed the ruling of these two motions. Any appeal can now be perfected by the third-party defendants on all issues.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter herein.

2. Under Article IV, Section 1,[1] of the Constitution of the United States, this Court must give full faith and credit to the unmodified judgments rendered in the Alaska Superior Court Cases, unless the judgments were procured by fraud or appear invalid from the record of the case in the Alaska Superior Court wherein the judgments were rendered. There is no evidence in this case that the Alaska judgments were procured by fraud and, based on the record of the court in the case wherein the judgments were rendered, the same appear to be regular in all respects and are valid.

3. Plaintiffs are therefore entitled to reduce to judgment against Duriron, in this Court, the judgments rendered for said plaintiffs in the Alaska Superior Court Cases and judgment should and therefore is rendered against Duriron herein for the following persons in the following amounts:

(a) Charles William Stephenson — $264,480.71

(b) Charles William Stephenson, as father and next friend of Cathy Stephenson, also known as Donna C. Stephenson — 302,770.38

(c) Charles William Stephenson and Nancy Stephenson — 6,544.95

(d) Norman Bakke and Leota Bakke — 102,678.93

---

[1]. "Full Faith and Credit shall be given in each State to the Public Acts, Records and Judicial Proceedings of every other State."

plus interest at 6% per annum from December 1, 1966.

■ 4. The claims asserted by Duriron and Aetna against Kuhns and Hartford are ancillary to the remedies sought by plaintiffs. This Court is vested with jurisdiction to furnish such ancillary remedies as are sought by Duriron and Aetna. Wichita Railroad and Light Company v. Public Utilities Commission of the State of Kansas, 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124, second syllabus.

■ 5. The controversy between Duriron and Hartford as to the existence of coverage under Hartford's Policy, the extent of liability thereunder to the persons injured and damaged, and Hartford's obligation to defend Duriron—the controversy between Duriron and Kuhns for the determination of primary, as distinguished from secondary liability, are actual, justiciable controversies, determinable by declaratory judgment. Travelers Indemnity Co. v. Cochrane, 155 Ohio St. 305, 98 N.E.2d 840, first syllabus; Ohio Farmers & Indemnity Co. v. Chames, 170 Ohio St. 209, 163 N.E.2d 367; Dayton Fabricated Steel Company v. Dayton Town and Country Inc., supra; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 second syllabus.

6. Aetna is subrogated to the rights of Duriron, its insured, under the terms of its policy and is entitled to maintain this third party action, as such subrogee, against Kuhns and Hartford for the wrong which resulted in the judgments against Duriron, Massachusetts Bonding & Insurance Company v. DingleClark, Co., 142 Ohio St. 346, 52 N.E.2d 340, second syllabus.

7. Under the Findings of Fact, Conclusions of Law and Judgments rendered in the Alaska Superior Court Cases, Duriron was held secondarily liable for the wrongdoing of Kuhns. Such adjudication is binding on this Court in this case. Moreover, Kuhns as the person primarily liable, and Hartford, as the insurer of Duriron, having been given full and fair opportunity to defend, they are concluded and bound by the findings, conclusions and judgments rendered in the Alaska Superior Court Cases. Hessler v. Hillwood Manufacturing Company, supra; Hartford Accident and Indemnity, Company, supra; Hendershot v. Ferkel, supra. Accordingly, this Court must and does find Duriron secondarily liable for Kuhns' wrongdoing.

8. By reason of the foregoing, Duriron, and Aetna as its subrogee, shall have declaratory judgment that they be saved harmless by Kuhns from the duty to pay the judgments rendered against Duriron in the Alaska Superior Court Cases, and are entitled to indemnification by Kuhns for all expense, costs or damage paid and/or incurred as the result of the failure of The Valve or litigation arising directly or indirectly with respect thereto. Massachusetts Bonding & Insurance Company v. DingleClark Company, supra.

9. Kuhns failed to make The Valve of an alloy meeting ASTM Specifications A395–56T and breached its contract to do so. Duriron exercised ordinary care and was not negligent in assembling, testing or selling The Valve.

10. Duriron and Aetna's claims against Kuhns and Hartford arise, out of the policy of insurance on the one hand and out of the express warranty on the other, ex contractu, but even if such claims are sounded in tort and arise ex delicto, Duriron and Aetna were lawfully empowered to assign a portion of their claims to plaintiffs in the Alaska Superior Court Cases. Central Ohio Gas & Fuel Co. v. Capitol City Dairy, supra; Athens & Pomeroy Coal & Land Co. v. Tracy, 22 Ohio App. 21, 153 N.E. 240, affirmed 115 Ohio St. 298, 152 N.E. 641; Pittsburg C. C. & St. L. Ry. Co. v. Volkert, supra; Akron Ambulance Service Inc. v. Cox, 101 OhioApp. 421; Cullen & Vaughn Company v. Bender Company, 122 Ohio St. 82, 170 N.E. 633, 68 A.L.R. 1332; Titus v. Wallick, supra.

11. Hartford having abandoned Duriron and having repudiated its obligation to assume and carry the defense of the litigation commenced against

Duriron by the injured persons, Aetna had the duty and Duriron had the right to enter into the Assignment Agreement for the protection of Duriron against a potential judgment in excess of the amount of liability insurance available to Duriron. The assignment agreement is a lawful agreement for the benefit of, and binding on, the parties thereto.

Hart v. Republic Mutual Ins. Co., 152 Ohio St. 185, 87 N.E.2d 347; Metcalf v. Hartford Accident and Indemnity Company, supra; Fullerton v. United States Casualty, 184 Iowa 219, 167 N.W. 700, 6 A.L.R. 367; Theodore v. Zurich General Accident, 364 P.2d 51 (Alaska); Milbank Mutual Insurance Co. v. Wentz, supra; Simon Elec. Co. v. Maryland Casualty, Company, 353 F.2d 608 (5 Cir.), 5th syllabus; Ripepi v. American Insurance Companies, 349 F.2d 300 (3 Cir.), 2nd, 3rd, 4th and 5th syllabi; Gray v. Nationwide Mutual Insurance, 422 Pa. 500, 223 A.2d 8.

12. Kuhns made an affirmation of fact as to The Valve to induce Duriron to purchase the same and Duriron relied on such affirmation, that the metal would meet ASTM Specifications A395–56T, in purchasing the same—all of which amounted to an express warranty within the definition furnished by the Ohio Supreme Court in Rogers v. Toni Home Permanent Co., supra.

13. Kuhns breached its express warranty and was negligent in failing to furnish The Valve composed of ductile iron having the mechanical or physical properties set forth in ASTM Specifications A395–56T, by reason whereof, Duriron, and Aetna as its insurer subrogee, shall have declaratory judgment that they be saved harmless and be indemnified by Kuhns for any damages and expense suffered as a result thereof. United Pacific Insurance Company v. Balcrank, supra; Hessler v. Hillwood Manufacturing Company, supra.

14. Kuhns and Hartford were promptly notified that claim was made on behalf of the injured persons based on the failure of The Valve to meet the specifications for ductile iron. They were repeatedly given similar notice after litigation was commenced against Duriron and were requested to, and given opportunity to, defend. The allegations of the plaintiffs' complaints, as the same were lodged in every court, asserted claims based on the failure of The Valve to meet the specifications and brought the actions within the coverage of Hartford's Policy.

■ Where the allegations in the complaint or complaints bring the action within the coverage of the policy, the insurer is required to make defense, regardless of the ultimate outcome of the action or the liability to the insured. Lessak v. Metropolitan Casualty Ins. Co., supra; Socony Vacuum Oil Co. v. Continental Casualty Co., supra.

15. By the Vendors Endorsement, attached to the Hartford Policy, Duriron was insured under the policy. American Indemnity Co. v. Sears, Roebuck & Co., supra. Hartford was obligated to defend Duriron in the Alaska Superior Court Cases and is obligated to pay the judgments rendered against Duriron and to pay Duriron and Aetna all costs and expense paid or incurred as the direct or indirect result of the litigation and/or the condition of The Valve.

16. Judgment is rendered for Duriron against Hartford and Kuhns in the sum of Seven Thousand Ninety Nine Dollars and Seventy Nine Cents ($7,099.-79) in reimbursement for reasonable, necessary expense paid in the defense of the Alaska Superior Court Cases.

17. Judgment shall be rendered for Aetna against Hartford and Kuhns in the sum of One Hundred Two Thousand Four Hundred Forty One Dollars and Twenty Six Cents ($102,441.26) in reimbursement for reasonable, necessary expense paid in the investigation and defense of Duriron in litigation arising by virtue of the condition of The Valve.

18. Hartford shall pay, on behalf of Duriron, as an insured person under its policy, the judgments, interest and costs

1. rendered on behalf of plaintiffs against Duriron in the captioned

action, as is set forth in paragraph 3 supra.

2. rendered on behalf of the other plaintiffs against Duriron in the Alaska Superior Court Cases, as follows:

| | |
|---|---|
| Henry Aungie | $4,253.78 |
| Emma Aungie | 1,589.03 |
| Henry Aungie and | |
| Emma Aungie | $5,915.32 |
| Brenda Carter | 1,802.68 |
| Armond Carter and | |
| Brenda Carter | 7,355.78 |
| Duane MacLeod and | |
| Vera MacLeod | 3,980.53 |

plus interest at 6% per annum from December 1, 1966.

3. if any, rendered against Duriron in all other litigation commenced by any person in any court as a direct or indirect result of the condition of The Valve.