428 F.2d 387
 Charles William STEPHENSON, Charles William Stephenson, as
father and next friend of Kathy Stephenson, a/k/a Donna C.
Stephenson, Charles William Stephenson and Nancy Stephenson,
Norman Bakke and Leota Bakke, Plaintiffs-Appellees,
v.
DURIRON COMPANY, Inc., Defendant Third-Party Plaintiff-Appellee.
AETNA INSURANCE COMPANY, Third-Party Plaintiff-Appellee,
v.
KUHNS BROTHERS COMPANY and Hartford Accident and Indemnity
Company, Third-Party Defendants-Appellants.
 No. 19580.
 United States Court of Appeals, Sixth Circuit.
 June 4, 1970.
 
 William H. Selva, Dayton, Ohio, for third party defendants-appellants; Curtner, Selva, Parkin & Seller, Dayton Ohio, on the brief.
 P. Eugene Smith, of Marshall, Smith & Green, Dayton, Ohio, on brief for appellees Duriron Co., Inc., and Aetna Insurance Co.
 James C. Baggott, Dayton, Ohio, for plaintiffs-appellees Stephenson, and others; John M. Savage, Anchorage, Alaska, on the brief.
 Before McCREE and COMBS, Circuit Judges, and McALLISTER, Senior circuit judge.
 McALLISTER, Senior Circuit Judge.
 
 
 1
 On March 16, 1962, there occurred a disastrous explosion of natural gas in Anchorage, Alaska, resulting in injuries to plaintiffs and damages to their property. The gas had seeped through the earth and entered plaintiffs' residence because of a fracture in a valve installed in a gas distributing system. The valve was defective. It should have been made of certain ductile iron, according to required specifications; it was made, instead, of cast iron.
 
 
 2
 The owner of the gas distributing system was the Anchorage Natural Gas Corporation, which had purchased the valve in question from the Duriron Company, a New York corporation, with its principal place of business at Dayton, Ohio. The Duriron Company had purchased the valve from Kuhns Brothers Company, a Dayton, Ohio, corporation, which was guilty of negligence in making and pouring the valve body casting, and in its testing procedures which failed to discover the departure from the required specifications for the ductile iron.
 
 
 3
 Although the Duriron Company was not negligent, the negligence of its vendor, Kuhns Brothers, was attributable to Duriron under Alaska law. The Aetna Insurance Company was Duriron's insurer, insuring Duriron against such risks as damages resulting from its sale of the valve to the distributing gas company.
 
 
 4
 Plaintiffs, and others similarly injured as a result of the explosion, commenced suits in the Superior Court for the State of Alaska against Duriron. They also commenced similar suits in the United States Court for the Western District of Washington at Alaska against Duriron, as well as in the United States District Court in Dayton, Ohio.
 
 
 5
 The gas distributing company commenced actions against Duriron in the United States District Court at Seattle; and also filed a cross-claim in the Alaska Superior Court cases, seeking a judgment against Duriron in order that it be saved harmless and indemnified against loss resulting from the claims of persons injured in the explosion, and from the expense incurred in litigation commenced as a result of Duriron's failure to deliver a valve meeting the specifications which Duriron had agreed to furnish.
 
 
 6
 Kuhns Brothers Company was insured by Hartford Accident and Indemnity Company, which had issued a policy to Kuhns covering liability for Kuhns' furnishing the defective valve. When the actions were commenced by plaintiffs against the Duriron Company, both Duriron and its insurer, Aetna, requested Kuhns and Hartford to provide a defense, and to save Duriron and Aetna harmless from expense incurred and judgments, if any, that might be rendered in the action. As soon as plaintiffs' actions were commenced, Duriron and Aetna accompanied their requests to Kuhns and Hartford to defend, with copies of the complaints filed by plaintiffs.
 
 
 7
 The complaints and cross-claims of the gas distributing company, in the State of Alaska case, specifically asserted that Duriron's liability was based on a breach of warranty with respect to the specifications of the metal of which the valve was composed. Kuhns actually knew, and Hartford was charged with Kuhns' knowledge, that it alone controlled the means to make, or failure to make, the valve of ductile iron which conformed to ASTM specifications of A 395-56T, which were the specifications represented by Kuhns to have been those to which the valve conformed, and which was relied upon by Duriron and the gas distributing company-- and intermediate vendors of the valve-- and which because of the non-conformity of this valve to these specifications, caused it to break, resulting in the leakage of the gas, and causing the injury to plaintiffs. It is agreed that the valve was to be manufactured out of an alloy made by a secret process of the International Nickel Company, known as 'ductile iron,' and which met ASTM specifications A395-56T, which secret process was known to Kuhns, as a licensee of International Nickel Company.
 
 
 8
 Duriron, as mentioned above, was not negligent in its sale of the valve. It was powerless to discover that Kuhns failed to use ductile iron, meeting ASTM specifications A395-56T, in casting the valve. The evidence discloses that Kuhns' chief metallurgist sent a three-page written warranty, with a letter to Duriron, stating the valves which Kuhns proposed to make and sell to Duriron for resale would be composed of ductile iron conforming to the aforementioned specifications. Duriron's only warranty to the purchaser was in the same language as Kuhns' warranty to Duriron, and Duriron furnished the gas distributing company with a copy of Kuhns' three-page warranty.
 
 
 9
 Hartford's policy of insurance issued to Kuhns contained a vendor's endorsement, which provided that such insurance as was offered by the policy regarding 'Products Hazard,' applied also to any person or organization with respect to the distribution or sale, in the course of business of such person or organization, of goods or products manufactured, sold, handled, or distributed by Kuhns, subject to the provisions (a) that the insurance did not apply to liability arising from the negligence of such person or organization, and (b) that the insurance did not apply to any express warranty unauthorized by Kuhns.
 
 
 10
 In response to the request of March 20, 1964, made by Duriron and Aetna to Kuhns and Hartford to defend the suit commenced by plaintiffs, Kuhns and Hartford refused to assume the defense.
 
 
 11
 On May 24, 1965, after Duriron had challenged the venue and jurisdiction of the Alaska Superior Court, that court dismissed Duriron from the Alaska cases, but upon plaintiffs' appeal in that action, the Alaska Supreme Court reversed the Alaska Superior Court and held that that court had in personam jurisdiction over Duriron. Duriron then filed a petition for a writ of certiorari with the United States Supreme Court, seeking reversal of the decision of the Alaska Supreme Court. The United States Supreme Court, however, denied the petition for the writ of certiorari.
 
 
 12
 When such challenge to the jurisdiction had been rejected, Duriron and Aetna again called upon Kuhns and Hartford to defend, and Kuhns and Hartford refused, as they did on six separate occasions when Duriron and Aetna had informed them of the basis of plaintiffs' claim, and demanded that they assume the defense of the actions against Duriron. On each occasion, Hartford informed Aetna and Duriron that it would not defend the actions.
 
 
 13
 The case finally came to trial in the Superior Court of the State of Alaska and, a jury having been waived, the court rendered written findings of fact and conclusions of law, and rendered judgment against Duriron in the total sum of $701,372 in favor of eleven plaintiffs.
 
 
 14
 Prior to the trial of plaintiffs' case, Duriron, Aetna and the other co-defendants entered into an assignment agreement under which Duriron and Aetna agreed to assign to plaintiffs the right to indemnification as against Kuhns and Hartford, and to pay a maximum amount of $50,000 in the event Duriron obtained a judgment in its favor in a third-party action against Kuhns and Hartford. In consideration of this covenant, plaintiffs agreed not to attempt execution upon the assets of Duriron or Aetna, in the event that they secured a judgment, but to rely upon the assignment of Duriron's and Aetna's rights against Kuhns and Hartford; and the co-defendants also agreed to release Duriron from all claims for indemnity.
 
 
 15
 After plaintiffs secured the judgment in the State of Alaska, they filed it in the proceedings still pending in the United States District Court in Dayton, Ohio. In the meantime, Kuhns and Hartford had been brought into the case by Duriron. Kuhns was not a party to the action in the State of Alaska because service could not be made upon it.
 
 
 16
 Under the agreement entered into by the plaintiffs and defendants in the Alaska Superior Court case, the plaintiffs acquired, by an assignment, the rights of Duriron and Aetna to recover from Kuhns and Hartford any judgment they might recover in Alaska against Duriron. In substance, the agreement stated that, under certain circumstances, the plaintiffs would not levy execution against Duriron.
 
 
 17
 Kuhns and Hartford breached the duty of defending the Alaska cases. There was no evidence of fraud or collusion, as claimed by them, on the part of Duriron and Aetna.
 
 
 18
 After post-trial motions filed on behalf of Duriron were overruled by the Alaska Superior Court, Hartford Accident and Indemnity Company appeared for the first time in the case. An appeal bond was filed, which was signed in the name of Duriron by a lawyer acting for Hartford, and a notice of appeal was filed in the name of Duriron by the same lawyer, who notified Duriron and Aetna that his actions were done on behalf of Hartford, although neither Duriron nor Aetna was asked for their consent, nor gave it to these actions of the lawyer for Hartford. At the same time, Hartford employed another lawyer who, for the first time, filed an action in the Alaska federal court asking that plaintiffs' judgment be declared void, on the ground that Duriron had conspired with all parties to the litigation to defraud the court, Hartford, and Kuhns by entering into the agreement to assign a portion of the Duriron rights in the litigation. In the foregoing suit filed in the Alaska federal court, Hartford asked for compensatory damages against Duriron in a sum in excess of $700,000 and for punitive damages in the sum of $1,000,000. Aside from this action in the Alaska federal court, the attorney for Hartford in the state court appeal filed a motion in the name of Duriron, asserting that Duriron had conspired with the parties to the litigation to defraud the court by entering into the assignment agreement, and asked the Supreme Court of Alaska and the Alaska Superior Court to set aside the judgment based on Duriron's fraud. The 'Points on Appeal' filed in Duriron's name by the attorney for Hartford were designed for an argument that the Trial Court had erred in finding Duriron free of negligence, and in finding Kuhns Brothers negligent in failing to furnish a valve meeting ASTM specifications A395-56T.
 
 
 19
 Duriron thereafter requested the attorney for Hartford to make no arguments in Duriron's name in contradiction of the record or the facts, and that he make no arguments against the interest of Duriron; and both Duriron and Aetna were put to additional expense to obtain an order in the Alaska Superior Court, and in the Supreme Court of Alaska, to prevent the attorney for Hartford from making further argument in the name of and contrary to the interests of Duriron. By an order filed December 19, 1967, the Alaska Supreme Court dismissed the appeal filed by the attorney for Hartford. No other appeal from the decision of the Alaska Superior Court is pending; and its judgment is final.
 
 
 20
 In the case pending in the United States District Court at Dayton, Ohio, filed by plaintiffs against Duriron, Duriron and its insurer filed a supplemental third-party complaint against Kuhns and Hartford, setting up events transpiring since the filing of its original third-party complaint, alleging its rights against Kuhns and Hartford, and seeking, among other remedies, a declaratory judgment that Kuhns Brothers was primarily responsible, Duriron, secondarily responsible, for the catastrophe; that Hartford's policy of insurance required a defense of Duriron in all the litigation, at the expense of Hartford, and seeking reimbursement for all expense incurred by Aetna in the litigation.
 
 
 21
 Stripped of further nonessentials of pleading and factual background, Judge Carl A. Weinman, Chief Judge of the United States District Court for the Southern District of Ohio, Western Division, on trial of the case in Dayton, held that where Hartford, having issued a policy containing a vendor's endorsement in the name of Kuhns Brothers, the manufacturer of the defective valve, was advised of the filing of actions against Duriron brought by plaintiffs, and where Hartford was furnished copies of the complaints which specifically asserted that Duriron's liability was based on a breach of warranty with respect to the specifications of the metal of which the valve was composed, and was requested to provide a defense for and to save Duriron harmless from expense incurred and judgments that might be rendered, but that Hartford had refused to assume such defense, then Hartford was bound by the judgment rendered against Duriron; and that such judgment was entitled to full faith and credit. The District Court found that plaintiffs' judgments rendered in the Alaska Superior Court should be reduced to judgment in the United States District Court at Dayton, Ohio, and were, accordingly, reduced to judgment in such court, against Duriron; that the claims asserted by Duriron and Aetna against Kuhns and Hartford were ancillary to the remedies sought by plaintiffs, and the District Court was vested with jurisdiction to furnish such ancillary remedies to Duriron and Aetna; that the controversy was determinable by a declaratory judgment; that Aetna was subrogated to the rights of Duriron, and entitled to maintain its third-party action; that the judgments rendered in the Alaska Superior Court, in which Duriron was held secondarily liable, were binding on the United States District Court in Dayton; that Duriron and Aetna, as its subrogee, were granted declaratory judgments that they be saved harmless by Kuhns from the duty to pay the judgments rendered against Duriron in the Alaska Superior Court, and were entitled to indemnification by Kuhns for all expense, costs, or damage resulting from the failure of the valve in question, or litigation arising with respect thereto, and that judgments as prayed by Duriron and Aetna be rendered against Kuhns and Hartford.
 
 
 22
 In its opinion, the District Court considered the evidence and the arguments of appellants; the law with regard to Hartford's duty to defend; the claimed duty of Duriron to inspect or test for latent defects in the valve manufactured by Kuhns; the liability of Kuhns for breach of its contract to manufacture a valve of ductile iron, meeting the required specifications; the application of the full faith and credit clause of the United States Constitution with regard to the enforcement of the Alaskan judgments in the United States District Court in Ohio; the defense of appellants based on claimed estoppel; the defense of the statute of limitations; the defense of appellants based on nonpayment of the Alaskan judgments by Duriron, and the question of the abuse of process in connection with Hartford's allegations in the appellate proceedings carried on by its attorney after the Alaskan judgments. With regard to the latter, the District Court declared:
 
 
 23
 'Hartford's conduct in the Hartford Appeal and its commencement of the Alaska Federal Case was malicious, vexacious, and the actions were taken with intent to harm, oppress, harass and coerce Duriron and Aetna to assume and pay the lawful obligations, debts and/or duties of Hartford and Kuhns.'
 
 
 24
 The District Court, with respect to the remedies, concluded:
 
 
 25
 'Judgments, Declaratory judgments and Mandatory Injunction shall issue with respect to the foregoing, in favor of plaintiffs, third party plaintiffs (Duriron and Aetna) and against Hartford and Kuhns.'
 
 
 26
 The judgment satisfied the plaintiffs' judgments, and the costs and expenses incurred by Duriron and Aetna in the Alaskan litigation and in the Dayton litigation.
 
 
 27
 We have made a careful examination of Judge Weinman's comprehensive Findings of Fact, Conclusions of Law, and Decision. The Findings of Fact are sustained by substantial evidence. They are not clearly erroneous; and we are in accord with the application of the law to the facts set forth in the reported decision of this case in Stephenson v. Duriron Company, D.C., 292 F.Supp. 66.
 
 
 28
 'It is not the policy or practice of this court, in reviewing cases on appeal where a district court has rendered a comprehensive opinion with which we find ourselves in full agreement, to rewrite such an opinion and, in a sense, to deprive the trial court of the credit of its careful consideration of the issues and arguments, and complete determination of the cause.' Patrol Valve Co. v. Robertshaw-Fulton Controls Co., 210 F.2d 146, 147, 148 (C.A. 6). We have applied the same practice, in the same language, in other cases. West v. United States, 274 F.2d 885, 889 (C.A. 6). Rittenberry v. Lewis, 333 F.2d 573, 574 (C.A. 6); United States v. 'Cal's Tupelo Blossom U.S. Fancy Pure Honey,' 344 F.2d 288 (C.A. 6).
 
 
 29
 In accordance with the foregoing, the judgment of the District Court is affirmed.