**Thomas M. BAGGOTT, Trustee, Plaintiff,**

v.

**PIPER AIRCRAFT CORPORATION, Defendant.**

No. C-3-86-615.

United States District Court, S.D. Ohio, Western Division.

July 20, 1999.

See also 47 B.R. 628.

Thomas McCann Baggott, Altick & Corwin, Dayton, OH, John H. Bennett, Jr., Pohl, Bennett & Mathews, Houston, TX, Benton Musslewhite, Houston, TX, for Thomas M. Baggott, trustee for Zoomaire Inc. and Skyways Inc., appellant.

James Michael Wiles, Jay Bernard Eggspuehler, Wiles, Boyle, Burkholder & Bringardner, Columbus, OH, John Talbot Ducker, Talbott & Ducker, Dayton, OH, for Piper Aircraft Corp, appellee.

## OPINION ON ISSUES IDENTIFIED BY COURT IN ITS DECISION OF APRIL 8, 1991 (DOC. # 22); FURTHER PROCEDURES ESTABLISHED

RICE, District Judge.

This lawsuit arises out of the crash of a Piper Aztec airplane on March 14, 1977, near Fife, Scotland.[1] In that crash, the pilot of the plane was injured, and the three passengers were killed. The Defendant, Piper Aircraft Corporation ("Piper"), was the manufacturer of that aircraft. The Plaintiff is the Bankruptcy Trustee for Zoomaire, Inc. ("Zoomaire"), and Skyways, Inc. ("Skyways"), the companies which sold the aircraft.

On June 9, 1978, the personal representatives and next-of-kin of the passengers initiated a wrongful death and survivorship action against Piper in the United States District Court for the Middle District of Pennsylvania. *William Brown, et al. v. Piper Aircraft Corp.*, Case No. 78–552 (M.D.Pa.) ("Pennsylvania action").[2] On April 10, 1979, Judge Muir of that court sustained Piper's motion for partial summary judgment, holding that the plaintiffs'

---

1. The following is an abbreviated statement of the circumstances giving rise to this lawsuit. A detailed recitation of same is contained in the Court's Decision of April 8, 1991 (Doc. # 22).

2. The Pennsylvania action was subsequently amended to include the pilot's claim against the Defendant.

wrongful death claims were barred by the applicable statute of limitations. On June 1, 1979, Judge Muir sustained the plaintiffs' motion to dismiss the Pennsylvania action with prejudice.[3]

On March 13, 1979, while the Pennsylvania action was pending, the pilot, as well as the personal representatives and next-of-kin, filed an action against Piper, Zoomaire and Skyways, in the Court of Common Pleas for Montgomery County, Ohio. *Thomas Baggott, et al. v. Piper Aircraft Corp., et al.*, Case No. 79–648 (Montgomery County Common Pleas) ("Ohio action"). Piper moved to dismiss that action. Although the Ohio Judge rejected Piper's argument that it was not subject to personal jurisdiction, that judicial officer, relying upon *State ex rel Phillips v. Polcar,* 50 Ohio St.2d 279, 364 N.E.2d 33 (1977), did dismiss Piper as a party defendant in the Ohio action, in deference to the then pending Pennsylvania litigation. On January 10, 1983, the Ohio action proceeded to a bench trial. Zoomaire and Skyways, the two remaining defendants in that action, having ceased to be operating corporations before the plane crash occurred, did not appear. On May 4, 1984, Judge Gounaris of the Common Pleas Court issued an amended judgment, in which he held that Zoomaire and Skyways were jointly and severally liable to the Ohio action plaintiffs in the sum of $4,200,000.

Since Zoomaire and Skyways had ceased to exist long before the judgment was entered against them, the Ohio action-plaintiffs were not able to obtain satisfaction of that judgment from those corporations.[4] As a consequence, the Ohio action-plaintiffs, as judgment creditors of Zoomaire and Skyways, filed petitions in bankruptcy against those two corporations. *In re Zoomaire, Inc.*, Case No. C–3–84–1899 (Bankr.S.D.Ohio); *In re Skyways, Inc.*, Case No. C–3–84–1900 (Bankr.S.D.Ohio). Subsequently, the Plaintiff was appointed as Trustee for the two bankrupt companies and initiated this litigation, by filing consolidated adversary proceedings against Piper in Bankruptcy Court. When this Court, acting in accordance with the Bankruptcy Judge's recommendation, withdrew the reference of those consolidated adversary proceedings, the consolidated proceedings became the instant litigation pending in this Court. *See* Doc. # 4. In this litigation, the Plaintiff alleges that Piper is liable to the bankruptcy estates of Zoomaire and Skyways, by virtue of implied contracts of indemnity between Piper and them, arising out of the relationship of Piper as manufacturer of the aircraft and Zoomaire and Skyways as its sellers.[5]

On April 8, 1991, this Court entered a Decision in which it established procedures leading to the resolution the Plaintiff's Mo-

---

**3.** Neither Judge Muir's decision sustaining Piper's motion for partial summary judgment, nor his decision sustaining the plaintiff's motion to dismiss with prejudice was appealed.

**4.** In its Decision of April 8, 1991, this Court noted that the Ohio action-plaintiffs had filed an amended complaint in that litigation, alleging that they were third-party beneficiaries of the implied contract of indemnification between Piper, on one hand, and Zoomaire and Skyways, on the other. Doc. # 22 at 6. That pleading was filed on November 17, 1983, before the amended judgment was entered in that litigation. *Id.* The Court also noted that Piper had moved to strike that pleading. *Id.* The parties have not informed the Court of the state court's ruling on that motion, although the issue is moot, given that the Ohio action has long since been closed.

**5.** No one has questioned the fundamental premise of the Plaintiff's claim in this litigation that a manufacturer such as Piper must indemnify sellers of its products, such as Zoomaire and Skyways, for losses they suffer as a result of defects in the manufacturer's products. Indeed, that fundamental proposition is unassailable. *See e.g., Anderson v. Olmsted Utility Equipment, Inc.*, 60 Ohio St.3d 124, 573 N.E.2d 626 (1991) (A manufacturer of a finished product which is required to pay for injuries sustained by a third party, due to the defective condition of a component part integrated into that product, may bring a claim for indemnification against the manufacturer of the component part.).

tion for Summary Judgment (Adv.Pro.Doc. #10).[6] In that motion, the Plaintiff had argued that he was entitled to summary judgment, because despite having had notice of the Ohio action, Piper voluntarily chose not to defend Zoomaire and Skyways at their trial.[7] If that motion were to be sustained, Piper would be required to indemnify Zoomaire and Skyways for the $4,200,000 judgment entered against them in the Ohio action, even though there is no indication that either of them has expended the first cent to defend the Ohio action or to satisfy that judgment. As this Court noted in its earlier Decision, the Plaintiff was relying upon common law voucher in order to impose liability upon Piper.[8] In *SCAC Transport (USA), Inc. v. S.S. Danaos*, 845 F.2d 1157 (2d Cir.1988), the Second Circuit explained the practice of voucher:

> Under the common-law practice of voucher, a defendant (or indemnitee) in an action who seeks indemnification from a third party (or indemnitor) serves a notice to defend on that party. This notice informs the indemnitor of the pendency of the action against the defendant and offers the indemnitor the opportunity to appear and defend the action. If the indemnitor accepts this opportunity, it becomes a party to the action and is of course bound by the

result. If the indemnitor refuses to assume the defense, the defendant, if unsuccessful in the original action, may bring a separate action against the indemnitor to enforce indemnification. In this separate action, the indemnitor can dispute the existence and scope of any requirement of indemnity. *See Humble Oil & Ref. Co. v. Philadelphia Ship Maintenance Co.*, 444 F.2d 727, 735 (3d Cir.1971) (in separate indemnification action by shipowner against stevedore, stevedore not bound by results of prior litigation where it had lesser duty to injured third party than did shipowner). The indemnitor is precluded, however, by principles of or analogous to collateral estoppel, from relitigating issues decided in the original action, notwithstanding its refusal to defend in that action.

*Id.* at 1161–62. *See also, Universal American Barge Corp. v. J–Chem, Inc.*, 946 F.2d 1131 (5th Cir.1991).

In its Decision of April 8, 1991, this Court rejected the arguments raised by the Defendant in opposition to the Plaintiff's Motion for Summary Judgment.[9] The Court did not, however, sustain the Plaintiff's Motion for Summary Judgment, because he had not established that he was entitled to judgment as a matter of law, as

6. The Plaintiff had filed his Motion for Summary Judgment in the consolidated adversary proceedings before the reference was withdrawn.

7. Since the parties had not questioned the basic premise that Piper must indemnify the sellers of its products, the focus of the Plaintiff's Motion for Summary Judgment was upon the manner in which Piper's duty of indemnification can be enforced.

8. The Sixth Circuit and Ohio courts have recognized the ancient common law practice of voucher. *See Travelers Indemnity Co. v. Evans Pipe Co.*, 432 F.2d 211 (6th Cir.1970); *Hessler v. Hillwood Manufacturing Co.*, 302 F.2d 61 (6th Cir.1962); *Bank v. Bank*, 68 Ohio St. 43, 67 N.E. 91 (1903); *American Bonding Co. v. Bd. of Ed. of Cincinnati*, 8 Ohio App. 216 (1917); *City of Cincinnati v. Boston*, 7 Ohio App. 350 (1917).

9. In particular, the Court rejected Piper's contention that the preclusive effect of voucher was not applicable, since neither Zoomaire nor Skyways had demanded that it (Piper) provide a defense. Doc. #22 at 12–13. In addition, the Court rejected Piper's assertion that principles of *res judicata* preclude this litigation. Piper had argued that the real parties in interest in this litigation are the pilot of the plane who was injured in the crash and the personal representatives of the passengers who were killed. Piper contended that the dismissal of the Pennsylvania action, with prejudice, was *res judicata* of claims by the real parties in interest. Since this Court did not agree with Piper that the pilot and the estates were the real parties in interest, it rejected Piper's argument that this litigation was barred by *res judicata*. *Id.* at 13–14.

required by Fed.R.Civ.P. 56(c). Doc. # 22 at 14–15. The Court identified two issues which had to be resolved before it would be able to conclude that the Plaintiff was so entitled, to wit: 1) has common law voucher survived the adoption of modern third-party practice, such as Rule 14 of the Ohio Rules of Civil Procedure; [10] and 2) is a party primarily liable (Piper) *necessarily* liable to parties secondarily liable (Zoomaire and Skyways) for the entire amount of the judgment, when there is no evidence that the parties secondarily liable have paid even one cent to satisfy that judgment. Doc. # 22 at 16–18. The Court directed the parties to file memoranda addressing these issues, *Id.* at 18–19, which they have done. *See* Docs. 26, 27, 28, 47, 48, 49 and 50. In addition, Piper argues that the Plaintiff's attempt to rely upon the preclusive effect of voucher is barred by the failure of Zoomaire and Skyways to comply with the requirements of § 1302.65(E) and, alternatively, is barred because the Ohio litigation was not fully and fairly litigated. As a means of analysis, the Court will discuss the first issue identified in its Decision of April 8, 1991, as well as the two additional arguments raised by Piper, under the general heading of "Voucher" and the second question raised in that Decision under the general heading of "Damages." [11]

## I. Voucher

■ Numerous courts and commentators have suggested that common law voucher has not survived the adoption of modern third-party practice, such as Rule 14 of the Ohio Rules of Civil Procedure. *See e.g., SCAC Transport,* 845 F.2d at 1162 ("Common law vouching is a superfluous procedure where impleader is available."); *Humble Oil & Refining Co. v. Philadelphia Ship Maintenance Co.,* 444 F.2d 727, 733–36 (3d Cir.1971); *West Indian Co. v. S.S. Empress of Canada,* 277 F.Supp. 1, 2–3 (S.D.N.Y.1967); *Hilton Oil Transport v. Oil Transport Co.,* 659 So.2d 1141, 1150 n. 6 (Fla.App.1995); 18 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 4452. *See also, Universal American Barge,* 946 F.2d at 1138–39.[12] However, in none of those cases has a court addressed the precise question before this Court, to wit: does the adoption of Rule 14 preclude the use of voucher in an action where the party secondarily liable can obtain personal jurisdiction over the party primarily liable. Piper contends that the Court need not resolve that broad question. Rather, it asserts that even if the adoption of Rule 14 does not preclude the use of voucher in

**10.** The Court noted that if voucher has been supplanted by modern third-party practice, Plaintiff's claim for indemnification would not be destroyed; rather, he would merely be precluded from relying upon the preclusive effect of voucher to establish liability.

**11.** In its Decision of April 8, 1991, the Court noted that the law of Ohio must be applied to resolve the question whether Zoomaire and Skyways are entitled to recover indemnification from Piper. *See* Doc. # 22 at 12. In the subsequently filed memoranda, neither party has challenged that statement. Indeed, in their memoranda, the parties rely on the law of Ohio. Accordingly, the Court will also apply the law of Ohio in this Decision.

**12.** Courts have continued to use voucher when the party secondarily liable (indemnitee) was not able to join the party primarily liable (indemnitor) as a party in the action in which the liability of the party secondarily liable was established, either because person-

al jurisdiction over the party primarily liable could not be obtained or because the tribunal in which the dispute was being heard did not recognize third-party practice. *SCAC Transport, supra* (arbitration proceedings in which third-party practice not recognized); *Travelers Indemnity, supra* (lack of personal jurisdiction over party primarily liable); *Hessler, supra* (same). Neither of those contingencies prevented Zoomaire and Skyways from asserting claims of indemnification against Piper in the Ohio action. It cannot be questioned that Zoomaire and Skyways could have filed third-party complaints against Piper. *See* Rule 14 Ohio Rules of Civil Procedure. Indeed, since Piper was initially named as a defendant in that litigation, Zoomaire and Skyways could have filed cross-claims against it. Moreover, the Ohio Judge concluded that he could exercise personal jurisdiction over Piper.

an action where the party secondarily liable can obtain personal jurisdiction over the party primarily liable, the manner in which a party secondarily liable can "vouch in" a party primarily liable was altered by the adoption of Ohio Revised Code § 1302.65(E).[13] Since Piper's argument presents a more narrow basis for decision, this Court turns to that contention.

Section 1302.65(E) provides:

(E) Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over:

(1) he may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound.

According to Piper, it is bound by the factual findings made by the Ohio Judge in the Ohio action only if Zoomaire and Skyways provided notice that it would be so bound if it did not enter the action and defend them. The Court agrees with Piper that the express language of § 1302.65(E) contains such a requirement. Indeed, the Plaintiff has not suggested an alternative interpretation of that statute; however, he does argue that the adoption of § 1302.65(E) did not alter the manner in which a party secondarily liable can "vouch in" the party primarily liable. In other words, the Plaintiff contends that the failure by Zoomaire and Skyways to follow the procedure proscribed by § 1302.65(E) does not prevent the Ohio action from being preclusive. In support of that argument, Plaintiff relies on Ohio Revised Code Section 1301.03, which provides:

Unless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement their provisions.

■ This Court disagrees with Plaintiff. Section 1302.65(E), § 2–607(5) of the Uniform Commercial Code, does not purport to displace or to abolish common law voucher in the context of the sale of goods; rather, in that context, it is a codification of those principles, albeit in somewhat altered form. Indeed, courts have frequently indicated that UCC § 2–607(5) is a codification of common law voucher in the context of the sale of goods. *See e.g.,* *Hydrite Chemical Co. v. Calumet Lubricants Co.,* 47 F.3d 887, 890 (7th Cir.1995); *Fasnacht v. Davis,* 1986 WL 1763 (Ohio App.1986). The Ohio Supreme Court has said that when the Ohio General Assembly has codified the law on a subject, the statute governs to the exclusion of the common law, unless there is clear legislative intent that the statutory provisions are merely duplicative. *Bolles v. Toledo Trust Co.,* 144 Ohio St. 195, 58 N.E.2d 381 (1944) (¶ 13 of the syllabus). There is nothing in the Uniform Commercial Code which indicates that the Ohio General Assembly intended its provisions to be duplicative of the common law it supplanted. Therefore, this Court concludes that in the absence of compliance with the requirements of § 1302.65(E) by Zoomaire and Skyways, which were out of business when the Ohio action was filed, Piper is not bound by the factual findings made in the Ohio action, in which those two entities were held to be

---

**13.** In its Decision of April 8, 1991, the Court, based upon the decision by the Ohio Supreme Court in *Bank v. Bank,* 68 Ohio St. 43, 67 N.E. 91 (1903), rejected Piper's contention that the preclusive effect of voucher was inapplicable, since neither Zoomaire nor Skyways had demanded that it (Piper) provide a defense. Doc. # 22 at 12–13. Piper had not argued that Plaintiff could not rely upon the preclusive effect of voucher because Zoomaire and Skyways had failed to comply with § 1302.65(E).

jointly and severally liable to the plaintiffs in the amount of $4,200,000.

Plaintiff argues that the evidence establishes, as a matter of law, that Zoomaire and Skyways did comply with the requirements of § 1302.65(E). Once again, the Court disagrees with the Plaintiff. Under that statute, a party primarily liable is bound only if the party secondarily liable gives notice to the former that a lawsuit is pending against the party secondarily liable, that the party primarily liable may enter and defend, and that if the party primarily liable fails to do so, it will be bound by factual findings made in that lawsuit in any subsequent litigation with the party secondarily liable. Herein, the Plaintiff has not presented evidence demonstrating, as a matter of law, that Zoomaire and/or Skyways gave such notice to Piper. Nevertheless, the Plaintiff argues that Piper was effectively given such a notice. In particular, the Plaintiff points to the fact that Piper had notice of the Ohio action; indeed, it was initially named as a defendant in that litigation. In addition, Plaintiff points to the fact that Ray White ("White"), the attorney who initially represented Piper in the Ohio action, filed an answer on behalf of Zoomaire and Skyways.[14] Plaintiff also points to the fact that John Holden, who succeeded White as counsel for Piper,[15] attended a handful of conferences with the Ohio Judge, after Piper was dismissed as a defendant and that he was present when the trial commenced.[16] The foregoing facts certainly provided Piper with notice of the pendency of the Ohio action and the opportunity to defend; however, these facts do not demonstrate that Zoomaire and Skyways ever gave notice to Piper that, if it did not defend them in that action, it would be bound by the findings made therein. Since such notice is an explicit requirement of § 1302.65(E), the Plaintiff has failed to demonstrate compliance with that statute. Consequently, this Court cannot impose liability upon Piper solely on the basis of the findings made by the Ohio Judge in that action.

In sum, the Court concludes that the factual findings made by the Ohio Judge in the Ohio action cannot be binding on Piper, under Ohio law, unless Zoomaire and Skyways complied with the requirements of § 1302.65(E), and that the Plaintiff has failed to demonstrate, as a matter of law, that the two judgment debtors/bankrupts did so comply.[17] Accordingly, this Court rejects the Plaintiff's argument that he is entitled to summary judgment, because common law voucher prevents Piper from relitigating the factual issues decided by the Ohio Judge in the Ohio action.[18] Of course, this does not

14. The uncontroverted evidence before the Court (the deposition of John Holden ("Holden") and the exhibits to that deposition) shows that Zoomaire and Skyways were served in the Ohio action on March 20, 1979. On April 12, 1979, White filed an answer on behalf of those two corporations. On May 7, 1979, the Ohio Judge granted White leave to withdraw as counsel for the two defendants.

15. In late 1980, White was killed in a plane crash. At the time of White's death, Holden had been practicing with him.

16. Holden testified that he attended these conferences, because the plaintiffs in the Ohio action were attempting to compel discovery from his client, Piper. Holden appeared before the Judge in order to argue that Piper should not be required to comply with the discovery requests, since it was no longer a party. With respect to his attendance on the first day of trial, Holden explained that he appeared in response to a telephone call from the Judge's bailiff. The transcript from that day reveals that Holden informed the judicial officer that he and White had represented Piper, which had been dismissed from the lawsuit and that, as a result, he had no standing to participate in the proceedings.

17. Since the Court has so concluded, it is not necessary to consider whether common law voucher survived the adoption of Rule 14 of the Ohio Rules of Civil Procedure.

18. Even if the failure of Zoomaire and Skyways to comply with § 1302.65(E) did not prevent the Court from applying the preclusive effect of voucher, the Court would nevertheless refuse to apply that aspect of the doctrine, because the factual findings, which Plaintiff seeks to prevent Piper from relitigat-

prevent the Plaintiff from proceeding with his claim for indemnification against Piper; it merely prevents him from establishing liability on the basis of the findings in the Ohio action.

## II. Damages

The second issue which this Court identified in its Decision of April 8, 1991, relates to the damages the Plaintiff can recover in this action, if successful. In his Motion for Summary Judgment, the Plaintiff argued that he was entitled to recover the amount the Judge awarded in the Ohio action, $4,200,000, simply because a judgment in that amount had been entered against Zoomaire and Skyways. The Court questioned whether that was the proper measure of the Plaintiff's damages in *this* litigation, an inquiry which arises from the unique facts of this case. Zoomaire and Skyways, the parties secondarily liable, had ceased to operate even before the Ohio action was initiated. There is absolutely no evidence before the Court that either of those two companies has paid even the first cent to satisfy the judgment that was entered against them in the Ohio action. Neither is there any evidence that they otherwise suffered any loss as a result of that litigation and its resultant judgment.

On a number of occasions, the Ohio Supreme Court has said that a party which is secondarily liable is entitled to indemnity from the one primarily liable when the former pays damages to the injured party.[19] For instance, in *Maryland Casualty Co. v. Frederick Co.*, 142 Ohio St. 605, 53 N.E.2d 795 (1944), the Ohio Supreme Court held, in the first two paragraphs of the syllabus:

1. Where a person injured through the violation of a common duty owed by two persons, sues and recovers from one of the persons owing the common duty and such person against whom recovery is had did not participate in the act or omission causing the injury, such latter person is only secondarily liable and *upon payment of the judgment and expenses* is entitled to indemnity from the one primarily liable, i.e., the one whose act or omission gave rise to the right of action.

2. Where judgment in a tort action is had against a party only secondarily or vicariously liable for the violation of a common duty owed by two persons, *upon the payment of such judgment and necessary expenses* by such party, there arises an implied contract of indemnity in favor of the party secondarily liable against the person (or persons) primarily liable.

(emphasis supplied). Similarly, the Ohio Supreme Court wrote in *Reynolds v. Physicians Ins. Co. of Ohio*, 68 Ohio St.3d 14, 16, 623 N.E.2d 30, 31 (1993):

The rule of indemnity provides that "where a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable." *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 14, 70 O.O.2d 6, 8, 321 N.E.2d 787, 789. When a person is secondarily liable due to his relationship to the other party, and is

---

ing, were made in the Ohio action without a full and fair, adversarial trial. It is uncontroverted that Zoomaire and Skyways did not participate in the trial of that lawsuit. Courts have held that the preclusive effect of voucher will not be applied when the first action was not a good faith, adversarial proceeding. *Universal American Barge*, 946 F.2d at 1136; *Moldex. Inc. v. Ogden Engineering Corp.*, 652 F.Supp. 584, 587–88 (D.Conn.1987) (and

cases cited therein). Since Zoomaire and Skyways did not participate in the Ohio action, this Court would conclude that said litigation could not have been a good faith, adversarial proceeding.

19. Zoomaire and Skyways were secondarily liable to Piper's primary liability.

compelled to pay damages to an injured party, he may recoup his loss for the entire amount of damages paid from the one who is actually at fault, and who, in fact, caused the injuries. See *Globe Indemn. Co. v. Schmitt* (1944), 142 Ohio St. 595, 603, 27 O.O. 525, 529, 53 N.E.2d 790, 794.

■ As the Plaintiff argues, neither of these cases, nor those cited in *Reynolds*, addressed the precise question before this Court, to wit: whether a party secondarily liable which has *not* paid a judgment may recover the amount of that judgment from the person primarily liable. Indeed, no Ohio court has addressed that precise question. However, the language used by the Ohio Supreme Court certainly suggests that a party secondarily liable may not recover the amount of a judgment entered against it from the party primarily liable, without having paid all or a portion of same. Moreover, the use of that language is not mere happenstance. In *Maryland Casualty*, the Ohio Supreme Court quoted and relied upon § 96 of the Restatement of Restitution, which provides:

A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other *for expenditures properly made in the discharge of such liability.*

(emphasis supplied). The language used in that section is buttressed by § 80 of the Restatement of Restitution, entitled "Amount of Recovery," which explicitly states that the amount of "reimbursement" to which a party secondarily liable is entitled is limited "to the amount of his net outlay properly expended."

The Plaintiff would have the Court ignore the fact that, while not deciding the issue, the Ohio Supreme has certainly said that the right of indemnification is predicated upon the payment of some sum. In support of this argument, the Plaintiff relies upon *Stephenson v. Duriron Co.*, 21 Ohio Misc. 43, 292 F.Supp. 66 (S.D.Ohio 1968), *affirmed*, 428 F.2d 387 (6th Cir.

1970). In *Stephenson*, Judge Weinman held that a party secondarily liable need not pay a judgment in order to be entitled to recover the amount of same from the party primarily liable. That case arose out of an explosion of a natural gas pipeline in Anchorage, Alaska. Duriron, the party secondarily liable or responsible, had furnished an iron valve which was defective and had caused the explosion. It was sued in Alaska by a number of people who resided in the area of the explosion and who had suffered personal injuries and/or property damage as a result of same. The residents obtained a judgment against Duriron in Alaska, which the latter did not pay. The residents then initiated an action to enforce that judgment in the United States District Court for the Southern District of Ohio. Duriron, in turn, sought indemnification from Kuhns, the company which had manufactured the valve and had sold it to Duriron (thus making it primarily responsible), as well as from Kuhns' liability insurance carrier. The insurance carrier was joined because the liability insurance policy it had provided to Kuhns contained a vendors endorsement, under which purchasers of Kuhns' products were also insured under the policy. Judge Weinman held that the failure of Duriron to pay the judgment entered against it was not a defense to the request for indemnification. He wrote, "[t]he Ohio courts have never held that payment or satisfaction of the judgment rendered against a person secondarily liable is a prerequisite to the right of indemnification by the person primarily liable." 292 F.Supp. at 85. This Court does not dispute the accuracy of that statement. Indeed, above, the Court has noted that no Ohio court has resolved that precise issue. However, Judge Weinman did not base his decision that Duriron's failure to pay the judgment could not be urged as a defense to its claim for indemnification *solely* upon the fact that no Ohio court had held that such payment was a prerequisite to the right of indemnification. Rather, that judicial officer noted

that Duriron had sought indemnification from both Kuhns and the liability insurance carrier, and that the plaintiffs were entitled to but one satisfaction of their judgment. Since Duriron was an insured under Kuhns' liability insurance policy, Judge Weinman, relying upon Ohio Revised Code § 3929.05,[20] held that Kuhns' insurance carrier was obligated to pay the judgment, regardless of whether Duriron had a right of indemnification against Kuhns. Accordingly, this Court concludes that Judge Weinman's discussion of Duriron's right to obtain indemnification from Kuhns, without first having paid the judgment entered against it, is *dicta*, which this Court chooses not to follow.[21]

Additionally, the Plaintiff argues that public policy dictates that Piper be required to indemnify Zoomaire and Skyways for the entire amount of the judgment entered against them, even though they have not paid that judgment. The Plaintiff contends that to conclude otherwise would have the adverse effect of imposing responsibility for loss caused by a defective product upon the retailer which sold the product and those who were harmed by its use. This Court does not agree. The purpose of the Plaintiff's claim for indemnification against Piper is to allow Zoomaire and Skyways to obtain compensation for the amount they have expended in answering for the wrong committed by Piper. Given that Zoomaire and Skyways had ceased to operate before the Ohio action was initiated, there is simply no evidence before the Court that ei-

ther has suffered any loss, paid any portion of the judgment entered against them or has otherwise expended any sum, because of that litigation being filed and/or the resultant judgment entered against them; therefore, *no* loss will be shifted to Zoomaire and Skyways, if Piper is not required to indemnify them for the full amount of the judgment entered against them.[22] With respect to those who were injured by Piper's allegedly defective product, the pilot and personal representatives and next-of-kin of the passengers have had the opportunity to recover from Piper in the Pennsylvania action. Moreover, at the time this Court filed its Decision of April 8, 1991, they had a suit pending against Piper in Scotland. The fact that Zoomaire and Skyways have not paid the judgment entered against them in the Ohio action may prevent the pilot and personal representatives and next-of-kin of the passengers from indirectly recovering from Piper in *this* litigation, does not mean that they have been totally denied an opportunity to obtain compensation for the damages allegedly caused by Piper.[23]

In sum, the language used by the Ohio Supreme Court in *Maryland Casualty* and *Reynolds*, which is fully supported by the Restatement of Restitution, compels the Court to conclude that Piper must indemnify Zoomaire and Skyways only to the extent that those companies have expended some amount in defending the Ohio action or by paying all or a portion of the judgment entered against them. Since the

---

20. Section 3929.05 provided that the responsibility of a liability insurance company is absolute regardless of whether its insured has paid the final judgment rendered against it. That statute remains unaltered to the present day.

21. The Plaintiff also relies upon *Bd. of Ed. of Columbus v. Fry, Inc.*, 22 Ohio App.3d 94, 489 N.E.2d 294 (Franklin Cty.1984). Therein, the Franklin County Court of Appeals did not remotely consider whether a party secondarily liable may recover the amount of a judgment entered against it in advance of the payment of that judgment.

22. While the bankruptcy estates of Zoomaire and Skyways will not have the funds to distribute which they would have had, if Piper were required to indemnify them, there is no evidence the estates will suffer *a loss* if the attempt at indemnification fails.

23. Plaintiff's Motion for Summary Judgment, if sustained, would have Piper indemnify Zoomaire and Skyways for the judgment entered against them, a judgment on which it appears that Zoomaire and Skyways, two defunct corporations, have paid absolutely nothing. Surely, public policy would not countenance such a result.

Plaintiff has not established, as a matter of fact and of law, that Zoomaire and Skyways expended any such sum, he has failed to establish that he is entitled to recover any sum in indemnification from Piper.

Although it appears that the two bankrupt companies did not make any such payment, this Court will not enter judgment against Plaintiff, since Piper has not moved for summary judgment on this issue. Nevertheless, the Court has concluded that the Plaintiff can recover only that sum which Zoomaire and Skyways expended in defending the Ohio action and/or satisfying all or part of the judgment entered against them in that litigation. Given that Plaintiff is the Bankruptcy Trustee for Zoomaire and Skyways and, thus, is knowledgeable about the financial affairs of those entities, the Court directs Plaintiff to demonstrate, by proper Fed.R.Civ.P. 56 evidence, within twenty days of date, whether Zoomaire and/or Skyways expended such a sum.[24] If no such sum was expended, the Plaintiff must show cause, in the same filing, why the Court should not dismiss this litigation. If cause is shown, the Court will convene a telephone conference call for the purpose of establishing further procedures for the resolution of this litigation.

---

[24]. The Court is aware that portions of the Defendant's Motion to Dismiss and for Summary Judgment (Doc. # 8), remain pending. In that motion, Piper requests that the Court dismiss this litigation on the basis of *forum non conveniens* or, in the alternative, that the Court grant it summary judgment. In support of its alternative request for summary judgment, Piper presented two arguments, one of which (that *res judicata* bars this litigation because the pilot and the personal representatives of the passengers are the real parties in interest) was rejected by the Court in its Decision of April 8, 1991. *See* Doc. # 22 at 19. In the event that Plaintiff shows cause, it will address the issues which remain pending in Defendant's previously filed motion, i.e., its request that this action be dismissed on the basis of *forum non conveniens* or, in the alternative, that it be granted summary judgment, because Zoomaire and Skyways failed to raise a statute of limitations defense in the Ohio action. However, this Court cannot conceive that the convenience of any party will be served by ruling on a motion to dismiss on the basis of *forum non conveniens* at this time, if the Plaintiff is not able to show cause as directed above.