OPINION
{¶ 1} This is an appeal by plaintiff-appellant, DeMarco, Inc., from a judgment of the Franklin County Court of Common Pleas granting the motion to dismiss of defendants-appellees, Johns-Manville Corporation (individually "Johns-Manville") and Allied Building Products Corporation (individually "Allied"), pursuant to Civ.R. 12(B)(6).
 {¶ 2} On December 16, 2002, appellant filed a complaint against appellees, setting forth causes of action for indemnification (first cause of action), unlawful interference with a business relationship (second cause of action), breach of express warranties (third cause of action), breach of implied warranty of merchantability (fourth cause of action) and breach of implied warranty of fitness (fifth cause of action).
 {¶ 3} The complaint alleged the following facts. In the fall of 1999, The Ohio State University ("OSU") solicited bids for the removal and replacement of roofing on the Museum of Biological Diversity ("museum"), located at 1315 Kinnear Rd., Columbus, Ohio. In furtherance of submitting a bid on the project, appellant solicited quotes from various vendors and suppliers for specified materials and products, including certain thermoplastic sheet metal roofing membrane. In the course of that activity, appellant received quotes from Johns-Manville for the membrane.
 {¶ 4} Appellant submitted a bid to OSU to perform the project at a quoted price of $742,621, which included a quote from Johns-Manville for the roofing membrane. OSU subsequently awarded appellant the contract to complete the project. Pursuant to procedures in the contract with OSU for installation of the new roof, Johns-Manville issued to OSU's construction manager, Mays Consulting Engineering ("Mays"), a guarantee that the membrane complied with contract specifications. On May 5, 2000, appellant submitted a purchase order to Allied for the membrane, and it was delivered to appellant at the job project site.
 {¶ 5} Appellant began installation of the membrane in May 2000. In July 2000, Mays noticed that some of the membrane was apparently de-laminating, giving rise to suspicions by Mays as to the integrity of the membrane. In August 2000, the problem was brought to the attention of OSU and appellant, at which time appellant's performance of the contract was suspended, pending further investigation as to the quality of the membrane. Ultimately, OSU caused appellant's removal from the project in April 2001.
 {¶ 6} While OSU was conducting its investigation, appellant learned that Johns-Manville was concurrently a defendant in a pending federal lawsuit, wherein OSU alleged that Johns-Manville was liable to it for furnishing defective roofing insulation as part of a previous roof replacement at the museum in 1991.
 {¶ 7} Appellant alleged that, during the bidding and installation process, it received assurances from Johns-Manville that the membrane was not defective and that it conformed to either contract specifications or specifications as represented by appellant in its submittals to OSU prior to commencing its installation. Based upon Johns-Manville's representations regarding the integrity of the membrane, appellant ultimately brought suit against OSU for breach of contract, contending that OSU wrongfully suspended it from completing the project. In response, OSU denied the allegations and filed a counterclaim against appellant, which included allegations that the membrane was defective.
 {¶ 8} While appellant's lawsuit against OSU was pending and being litigated, Johns-Manville and OSU settled their federal action. As part of that settlement, which OSU and Johns-Manville agreed would be confidential, Johns-Manville agreed not to cooperate with appellant in its lawsuit against OSU.
 {¶ 9} Appellant notified Johns-Manville of OSU's claims on January 7, 2002, and requested that Johns-Manville defend such claims. According to the complaint, Johns-Manville refused to defend OSU's claims as to the membrane, and Allied never responded to appellant's request to defend. Appellant further alleged that, in the course of litigating the lawsuit against OSU, it learned the membrane was defective; accordingly, because it could not defend the claims of defect and non-compliance with contract specifications, appellant had to settle its lawsuit with OSU "at a great discount without being fully compensated for its losses resulting from its suspension and ultimate removal" from the project.
 {¶ 10} Appellant's complaint sought indemnity from appellees for the differential in its losses in being prevented from completing the project, due to the alleged defective membrane, and the amount of its discounted settlement with OSU. Appellant alleged that the differential was at least $400,000.
 {¶ 11} On January 10, 2005, appellees filed a motion to dismiss appellant's first, fourth, and fifth causes of action pursuant to Civ.R. 12(B)(6) and 12(H)(2). More specifically, appellees argued that appellant's action for indemnification failed to state a claim because appellant had not been compelled to pay anything, and that appellant's tort claims for breach of implied warranties failed to state claims upon which relief could be granted because the economic loss doctrine bars recovery for purely economic losses. Appellants filed a memorandum contra on January 24, 2005.
 {¶ 12} By decision and entry filed March 4, 2005, the trial court granted appellees' motion to dismiss appellant's first cause of action (indemnification) against both appellees. Further, the court granted appellees' motion to dismiss appellant's fourth and fifth causes of action against Allied, but denied appellees' motion to dismiss appellant's fourth and fifth causes of action against Johns-Manville. Appellant subsequently filed a notice of dismissal, pursuant to Civ.R. 41(A)(1)(a), of the second, third, fourth, and fifth causes of action against Johns-Manville, and the fourth and fifth causes of action against Allied. By entry filed April 8, 2005, the trial court terminated the case.
 {¶ 13} On appeal, appellant sets forth the following single assignment of error for review:
The Trial Court committed error in sustaining Appellees' Motion to Dismiss by finding that Appellant would be unable to prove facts which would entitle it to indemnification from Appellees.
 {¶ 14} In its single assignment of error, appellant asserts the trial court erred in granting the motion to dismiss its indemnification claim. Appellant challenges the trial court's finding that indemnity was unavailable because the complaint failed to allege appellant was compelled to pay anything to OSU as a result of the lawsuit between those parties.
 {¶ 15} In granting the motion to dismiss, the trial court found the complaint "has not stated any facts suggesting that either of the Defendants expressly or impliedly contracted to pay any amounts that DeMarco might have to pay as a result of the OSU/DeMarco lawsuit." The trial court further found significant that "nothing in the Complaint suggests that DeMarco was compelled to pay anything to OSU as a result of the OSU/DeMarco lawsuit." Thus, the court concluded, in the absence of any allegations in the pleadings indicating that appellees were obligated to indemnify appellant, the complaint failed to state a cognizable indemnification claim.
 {¶ 16} An appellate court's standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. Ritchie v. Ohio AdultParole Auth., Franklin App. No. 05AP-1019, 2006-Ohio-1210, at ¶ 16. A motion to dismiss under Civ.R. 12(B)(6) tests the sufficiency of a complaint, and, therefore, a trial court must limit its consideration to the four corners of the complaint and accept as true all factual allegations in the complaint. Id. Further, "before the court may dismiss the complaint, `* * * it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.'" State exrel. Hanson v. Guernsey Cty. Bd. of Commrs. (1992),65 Ohio St.3d 545, 548, quoting O'Brien v. University Community TenantsUnion (1975), 42 Ohio St.2d 242.
 {¶ 17} Under the rule of indemnity, "`where a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable.'" Reynolds v.Physicians Ins. Co. of Ohio (1993), 68 Ohio St.3d 14, 16, quoting Travelers Indemnity Co. v. Trowbridge (1975),41 Ohio St.2d 11, 14.
 {¶ 18} The right of indemnity may result from an express agreement or contractual provision, or it may be implied from a contractual agreement or relationship. Indiana Ins. Co. v.Barnes, 165 Ohio App.3d 262, 2005-Ohio-6474, at ¶ 14, quotingWorth v. Aetna Cas. Sur. Co. (1987), 32 Ohio St.3d 238, 240. In the instant case, as noted by the trial court, appellant's complaint does not allege the existence of an express contract of indemnification between appellant and either Johns-Manville or Allied.
 {¶ 19} In contrast to an express agreement, an implied right to indemnity "is recognized when the party committing the wrong is so related to a secondary party that the secondary party becomes liable for the wrongs committed solely by the other."Barnes, supra, at ¶ 15. An implied right to indemnification "arises only within the context of a relationship wherein one party is found to be vicariously liable for the acts of a tortfeasor." Id.
 {¶ 20} Under Ohio law, the fact a party has voluntarily settled a claim (as opposed to being reduced to judgment) does not negate the right to indemnity. Globe Indemnity Co. v.Schmitt (1944), 142 Ohio St. 595, 604 ("the right to indemnity against an actual wrongdoer exists whether the one proceeded against in the first instance settles the loss voluntarily or has a judgment recovered against him"). However, after making a voluntary settlement, the indemnitee is required to show "he was legally liable and could have been compelled to satisfy the claim." Blair v. Mann (Apr. 8, 1999), Lawrence App. No. 98CA35.
 {¶ 21} Turning to the allegations of the complaint, after appellant brought suit against OSU for breach of contract, OSU filed a counterclaim, alleging, "among other things," that the membrane supplied by Johns-Manville was defective. Further, in a separate proceeding, Johns-Manville and OSU settled a case in federal court in which OSU had alleged Johns-Manville was liable to it for furnishing defective roofing insulation as part of an earlier roof replacement at the museum in 1991. Under the settlement agreement between Johns-Manville and OSU, Johns-Manville agreed not to cooperate with appellant in its lawsuit against OSU. Appellant alleged that, because it could not defend the claims of defect and non-compliance with contract specifications and submittals concerning the membrane, it was forced to settle its lawsuit with OSU "at a great discount without being fully compensated for its losses."
 {¶ 22} As noted above, appellant challenges the trial court's finding that indemnity is not available in instances where a plaintiff has made no payment of the settlement. Appellant citesOzko, Inc. v. Isaacson Constr., Inc. (Nov. 15, 1995), Summit App. No. 17078, for the proposition that an indemnitee may seek the difference between the amount a counterclaimant agreed to pay in a settlement agreement and the amount it owed on account. We do not find Ozko to be dispositive, however, as a review of that case indicates the appellate court ultimately determined that the trial court erred in awarding the indemnitee (under an express indemnity agreement) damages for its loss of monies owed on account.
 {¶ 23} The typical case addressing indemnity in the settlement context deals with an action by the indemnitee seeking to collect for "sums paid [by the indemnitee] in settlement of a claim" with the injured party. Jones v. Bank One, Cincinnati
(Dec. 24, 1998), Hamilton App. No. C-980097. See, also, GlobeIndemnity, supra. Federal courts, in interpreting Ohio law, have held that a party secondarily liable may not recover the amount of a judgment entered against it from the party primarily liable without having paid all or a portion of such judgment. Baggottv. Piper Aircraft Corp. (S.D.Ohio 1999), 101 F.Supp.2d 556, 564
(noting the Ohio Supreme Court's approval of Section 96 of the Restatement of Restitution, and holding that "[p]laintiff would have the Court ignore the fact that, while not deciding the issue, the Ohio Supreme Court has certainly said that the right of indemnification is predicated upon the payment of some sum"). See, also, Midwest Specialties, Inc. v. Crown Indus. ProductsCo. (N.D.Ohio 1996), 940 F. Supp. 1160, 1168 (applying Ohio law and denying indemnity claim where it was undisputed counterclaimants had not paid any damages to plaintiffs; "[t]he right to indemnity * * * becomes complete and enforceable only upon a payment by the claimant satisfying the whole of the obligation").
 {¶ 24} Even assuming, arguendo, that there may be circumstances where a party to a settlement may seek the right to indemnity despite having made no payment toward the settlement, we find in the present case that the trial court did not err in granting appellees' motion to dismiss. As noted, appellant's complaint does not allege the existence of an express contract of indemnity. Appellant argued before the trial court, as it does on appeal, that it's right to indemnity is based upon its compliance with the "vouching-in" provisions of R.C. 1302.65(E), part of Ohio's Uniform Commercial Code ("UCC"). In this respect, appellant alleged in its complaint that it notified appellees, at the time of the Court of Claims litigation, of OSU's claims, and requested that both Johns-Manville and Allied defend those claims.
 {¶ 25} R.C. 1302.65(E) provides in part:
(E) Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over:
(1) he may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound.
 {¶ 26} R.C. 1302.65(E) is a codification of the common-law vouching system. Baggott, supra, at 561. Under the common law, the concept of vouching-in originated as a device whereby a defendant would notify a non-party alleged indemnitor (the "vouchee"): (1) of the pendency of a suit against him; (2) that, if liability is found, the defendant will look to the vouchee for indemnity; (3) that the notice given constitutes a formal tender of the right to defend the action; and (4) that, if the voucher refuses to defend, it will be bound in any subsequent litigation between them as to the factual determinations necessary to the original judgment. Universal American Barge Corp. v. J-Chem.,Inc. (C.A.5, 1992), 946 F.2d 1131, 1138.
 {¶ 27} In the context of the UCC, the procedure for vouching-in is "a simple and expedient method by which a so-called middleman buyer notifies a seller that a transaction is claimed to involve a breach of warranty." Doherty v. The HigbeeCo. (Dec. 31, 1980), Cuyahoga App. No. 42245.
 {¶ 28} The posture of this case on appeal does not give rise to an indemnification claim based upon implied warranties under the UCC. Specifically, while appellant's fourth and fifth causes of action alleged breaches of implied warranties, appellant filed a notice of dismissal, pursuant to Civ.R. 41(A)(1)(a), as to the fourth and fifth causes of action against both appellees. Furthermore, the trial court, in its decision addressing appellees' motion to dismiss the fourth and fifth causes of action, cited authority for the proposition that the UCC did not apply to sales of materials incorporated into an improvement to real estate, and "therefore the UCC does not apply to the sales of these materials to [appellant]." The trial court's determination on this issue has not been appealed. Accordingly, appellant cannot sustain an indemnification claim based upon breach of implied warranties under the UCC.
 {¶ 29} Additionally, "the act of vouching in is not a method of obtaining indemnity." Oates v. Diamond Shamrock Corp.
(Ma.App. 1987), 503 N.E.2d 58, 59. Rather, "[v]ouching in merely binds the would be indemnitor to `any determination of fact common to the' litigation of the underlying action and the prospective action of the indemnitee against the indemnitor." Id. See, also, Moldex, Inc. v. Ogden Engineering Corp. (D.Conn. 1987), 652 F.Supp. 584, 587 (compliance with vouching-in statute "does not give rise to a right to obtain indemnity, but rather establishes a mechanism by which the findings determined in the first action are made binding in the second action"). Thus, "[w]hen a middleman seeks to recover from a manufacturer on the ground of indemnity, the middleman must aver that he or she has been held or is liable to his or her customers. The mere statement that claims have been asserted is not sufficient." 4 Anderson U.C.C. Section 2-607:243 (3 Ed).[1]
 {¶ 30} In the instant case, appellees contend, and we agree, that appellant's complaint does not allege the existence of any determination of fact resulting from OSU's counterclaim against appellant in the Court of Claims litigation, including any factual determination as to a defective product or, more significantly, a determination of liability on the part of appellant to OSU (or a factual determination as to liability on the part of appellees to OSU under the counterclaim). While there is support for the proposition that an indemnitee paying a portion of a settlement agreement is entitled to indemnity in instances where the indemnitee was "legally liable" to the party with which it settled for another's wrongdoing, the pleadings in this case do not allege that appellant paid OSU as a result of a judgment, or that appellant could have been compelled to pay a claim for which it was actually liable. Rather, based upon the allegations, appellant voluntarily settled its claims against OSU, under which appellant received payment from OSU (albeit for an alleged discounted amount), and we find unpersuasive appellant's contention that its complaint states a claim for indemnification based upon allegations it complied with the vouching-in provisions of R.C. 1302.65(E). Based upon the foregoing, and in light of our determination that appellees could not be required to indemnify appellant under implied UCC warranties, we agree with the trial court that appellant's complaint fails to state a claim for indemnification.
 {¶ 31} Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Klatt, P.J., and McGrath, J., concur.
[1] There is also authority holding that the voucher method under the U.C.C. "may not be invoked * * * when the underlying action was settled instead of fully litigated to judgment."Kaiser Alum. Chem. Sales, Inc. v. PPG Industries, Inc.
(C.A.7, 1994), 42 F.3d 1147, 1150. See, also, Blommer ChocolateCo. v. Bongards Creameries, Inc. (N.D.Ill. 1986),635 F.Supp. 919, 924 (a judgment "does not bind the vouchee if it was obtained through a settlement").